## Fall, et al. v. Read, et al.

(Decided March 7, 1922.)

### Appeal from Fulton Circuit Court.

1. Schools and School Districts—Indebtedness.—In estimating the total indebtedness of a graded school district to determine whether it has reached its limit as fixed by sections 157 and 158 of the Constitution, only the indebtedness of the school district can be considered, and the indebtedness of the municipality, although embracing a part or the whole of the graded school district, cannot be taken into the estimate.

2. Schools and School Districts—Indebtedness.—Where the graded school district includes the whole of the municipality, and a large, outlying, adjacent district, and the city has an outstanding bonded indebtedness of $30,000.00 and the school district has a separate indebtedness of $6,000.00 and proposes to and does vote a bond issue of $50,000.00, the $30,000.00 of indebtedness of the city proper cannot be considered in determining whether the school district has exceeded two per cent of the assessed valuation of the taxable property as provided by sections 157 and 158 of the Constitution.

3. Schools and School Districts—Proceeds of Bond Issue—Ratio Between White and Colored Schools.—Where the proceeds of the bond issue proposed to be voted are to be devoted to the building and repairing of the property of both white and colored schools, it is unnecessary to fix the ratio or basis upon which the funds are to be distributed between the two races before the bonds were voted and issued.

4.  Elections—Special Election Without Special Registration.—While
    the statute provides that a special registration for the registration
    of voters, entitled to participate in a special election, shall be
    held at least five days before the election, an election held without
    such registration will be upheld if it be made to satisfactorily ap-
    pear that the total number of unregistered voters, residing in the
    territory affected by the election, is so small that if all such
    persons otherwise entitled to vote should have been allowed to
    vote in said special election, and they had voted as a unit against
    said bond issue, the final election result would not have been
    changed.

W. J. WEBB for appellants.

H. T. SMITH for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This appeal is from a judgment of the Fulton circuit
court dismissing the petition of appellants, Fall and
Wright, and denying their prayer that the school bond is-
sue election be declared null and void, and the defendants,
board of education, city of Fulton, and the mayor and city
council of said city and other defendants be enjoined and
restrained from issuing and selling the $50,000.00 of
bonds voted at a special election held in January, 1922,
for the purpose of raising funds for building certain new
school edifices and repairing existing school property.
The Fulton graded school district embraces not only the
entire municipality but includes a large territory lying
outside of but adjacent to said city. The graded school is
organized and operating under chapter 14, Acts 1920.
In their petition appellants aver that the election should
be declared null and void, and the defendants, board of
education and city council, be enjoined from issuing and
selling the bonds (1) because the outstanding indebted-
ness of the said graded school district is now $6,000.00,
and in addition there is a municipal bonded indebtedness
of the city of Fulton of $30,000.00, which two sums, when
added to the proposed bond issue of $50,000.00, makes a
total of $86,000.00, which sum exceeds two per cent (2%)
of the assessed taxable property of the school district as
provided by sections 157 and 158 of the Constitution; (2)
the election was void for the reason that the call therefor
did not provide for a ratio of distribution of the funds
arising from the sale of the bonds as between the white
and colored school districts; (3) the special election and
all proceedings under the same are void because the elec-

tion was a special one held on January 4, 1922, and in the call for the election no provision was made for special registration of voters and no registration of voters was had as required by law or at all.

1. We have held in the case of Shaw v. City of May-field, 191 Ky. 389, and in Rogan v. Board of Education of the City of Middlesboro, 192 Ky. 770, that the outstanding indebtedness of a municipality cannot be taken into the estimate in determining whether a graded school district has reached the constitutional limitation of indebtedness; that the graded school district is a separate taxing unit from the municipality, and that the municipality may incur an indebtedness not exceeding the limits fixed in sections 157 and 158 of the Constitution of Kentucky, and the school district may likewise incur an indebtedness within limits fixed for school purposes by the same sections of the Constitution. As the graded school district of the city of Fulton and adjacent territory had only $6,000.00 of outstanding indebtedness, and according to its list of assessed taxable property might incur an indebtedness of approximately $65,000.00, the school district did not exceed its constitutional limit of outstanding indebtedness by the adoption of the $50,000.00 bond issue. The city of Fulton at the time had an outstanding indebtedness for city waterworks of $30,000.00, but this could not be included in the estimate of the indebtedness of the school district. Only the $6,000.00 which is the total outstanding indebtedness of the school district can be considered in determining what amount of bonds it may now issue and yet be within the constitutional limitation. As it appears that the present outstanding indebtedness of $6,000.00 added to the proposed bond issue of $50,000.00 for the school district will be clearly within its limit, the trial court did not err in denying appellants the relief which they sought upon this ground.

2. The second contention of appellants is also untenable. It was not necessary that the board of education set forth with exactness the amount of money which it proposes to expend for the erection of new school buildings for white pupils, nor the exact amount of money from this fund to be expended in the improvement of school buildings for colored pupils. It cannot be presumed that the board of education will make a wrongful appropriation of the funds in favor of either race. Should the board of education attempt to appropriate more than the *pro rata*

share of money derived from the sale of the bonds to the benefit of either the white or the colored schools, it would be time enough to raise this question and to prevent such illegal appropriation of the funds. The pupil children of the two races must be treated exactly the same in the expenditure of public funds. Colored Board of Education v. Board of Education of the White Graded Schools of the City of Mayfield, 180 Ky. 574.

3. The election at which the bonds were voted on January 4, 1922, was a special one and held on a day different from the regular election, and it is admitted that there should have been a special registration in accordance with section 1495 of the Kentucky Statutes, and that there was no special registration provided by those in charge of said election at which persons living in the city limits and entitled to vote in the election were permitted to register. By a stipulation of facts it is agreed that there were not exceeding twenty-five persons in the city of Fulton, a municipality of the fourth class, who have become legal voters in said city since the last regular election in November, and who have not registered as required by law, and that these persons, not being able to register, were disqualified to vote in the election and could not and were not allowed to vote therein. It is further stipulated that 600 voters, voting at said bond election, voted in favor of the bond issue, and only 80 voters, voting in said election, voted against said issue; that the election was regular in every respect except that no special registration was provided for the registration of voters in the city who had become such since the last regular registration, or had failed to register at the last regular registration, and that the returns were correctly tabulated and certified to the proper authorities. If it be conceded that all of the twenty-five persons in the city of Fulton, legal voters, deprived of the right to register by reason of the failure of the proper officials to provide a special registration, had voted against the bond issue, there would then have been only 105 votes against the issue of the bonds and 600 for it. Therefore, it clearly appears that the final result of the election would not have been different, and that the bond issue would have carried by an overwhelming majority. It is said in brief of counsel for appellants that this court in the cases of Early v. Rains, 121 Ky. 436, and Taylor v. Betts, 141 Ky. 138, held that the failure of the officials calling a special election

to at the same time provide a special registration at least five days before the special election for voters who did not register at the last previous registration as provided for in section 1495 of the Kentucky Statutes, rendered the election invalid. That section reads as follows:

"When an election or vote is ordered to be held or taken in any county containing any city or town belonging to either of said classes, at any other time than the regular November election, then the county judge, or other officer so ordering said election or vote, shall, at the same time, fix a day for the registration of those persons entitled to vote thereat whose names have not been recorded on the registration books of that year, and shall require the same to be published in like manner as the time and place of said election or vote are required to be published. Registrations under this section shall be known as special registrations, and any person so registered shall be entitled to vote at all elections held prior to the next general registration. Registrations prior to special elections shall be held not less than five days prior to the election."

The sole purpose of registration is to ascertain the persons living in the voting precincts affected, who are legally entitled to vote and give to those concerned an opportunity to know all the persons who assert a right to vote in said precinct or precincts, and to examine into their right, if any question be made, to note and determine whether they possess the qualifications entitling them to participate in the election before the election day. Where, as in this case, the number of voters prevented from participating in the election are so few as compared with the whole number cast that the final result of the election could not be changed in any way by their vote if they should all vote for the complaining party or contestant, and such party would still be in the minority, there appears no reason why an otherwise valid election should be set aside. The case of Early v. Rains, *supra,* was a contested election suit where a special election had been held without special registration, and it appeared that a number of persons had not been afforded an opportunity to register and were not, therefore, permitted to participate in the election, but it was not shown by what majority the election was carried, nor whether the number of voters deprived of participation in the election by reason of there being no special registration would have changed the result. Clearly in such case the

presumption would be indulged that the result of the election would have been different, had those deprived of their vote been allowed to participate in the election, or at least it could not be said with any degree of certainty that had the voters, who were deprived of participation in the election, been allowed to vote, the result would not have been different. In the instant case no injustice has been done, although the law requiring a special registration five days before a special election has not been followed. If, as said in Yates v. Collins, 118 Ky. 690, " 'Registration' is a system for the prevention of frauds in the exercise of suffrage by requiring voters to cause their names to be registered in books provided for the purpose in each election district, with appropriate particulars of residence, age, etc., to enable investigation to be made and the right of the voter to cast the ballot to be challenged, if there be occasion," and there was no fraud nor attempt at fraud, nor other irregularity in the election except the failure to provide a special registration at which not more that twenty-five persons in the city of Fulton qualified and entitled to register, in preparation for the special election, might have registered, no wrong whatever was done and no good purpose would have been accomplished by the special registration in this particular special election where those voting in favor of the bond issue numbered 600, while those voting against it were only 80. The rule applied in the cases of Early v. Rains and Taylor v. Betts, *supra,* should not therefore be applied here for the reasons calling it into operation in those cases do not exist here. This rule can only apply where the facts clearly show that the result of the election would not and could not have been different, had all of the persons living in the city and entitled to participate in the election, voted as a unit for the losing side, nor in cases where it is not shown whether the result of the election would have been different, had such persons registered and voted thereat.

The appellants, who are plaintiffs below, were not entitled to the relief which they sought by their petition on either of the grounds set forth, and the trial court properly dismissed their cause.

Judgment affirmed.