(No. 22632.—

THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Petitioner, *vs.* R. B. UPHAM, City Comptroller, Defendant.

*Opinion filed July 31, 1934.*

RICHARD S. FOLSOM, (FRANK S. RIGHEIMER, RALPH W. CONDEE, and FRANK R. SCHNEBERGER, of counsel,) for petitioner.

WILLIAM H. SEXTON, Corporation Counsel, for defendant.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

An original petition for *mandamus* was filed in this court on behalf of the board of education of the city of Chicago and against R. B. Upham, as city comptroller of the city of Chicago. The petition alleged that the board of education was authorized by law to issue its negotiable bonds in the aggregate amount of $25,000,000 to augment the working cash fund and mortgage certain school lands to secure the payment of the bonds; that the board of education, in full compliance with all statutory provisions, had directed the issuance of said bonds and the execution of the mortgage; that it became the duty of the president and secretary of the board of education to sign them and of the mayor of the city and the city comptroller to counter-sign them; that the president and secretary of the board and the mayor have agreed and consented to sign them, but the defendant, Upham, as city comptroller, has refused,

and now refuses, to sign them; that his refusal is predicated on three grounds, to-wit: (1) The board of education is not a body politic separate and distinct from the city of Chicago; that the bonded indebtedness, if created, would not be an indebtedness of the board of education but would be an indebtedness of the city of Chicago, and that the city of Chicago is already indebted beyond its constitutional limit and is inhibited by section 12 of article 9 of the State constitution from becoming further indebted; (2) the issuance of said bonds would permit the accumulation of a working cash fund in excess of the necessary requirements of the educational fund for the current year; and (3) the board of education has no right to mortgage school lands. The defendant filed an answer, which admits all of the material facts alleged in the petition but controverts the legal conclusions stated therein.

The following facts are necessary to an understanding of the questions involved: The revenues of the board of education have been greatly diminished since 1928 on account of the non-payment and delay in the collection of taxes as well as the lowering of assessments of property values. As a result, the board has been unable to pay in full the salaries of its school teachers and other necessary expenses. Unpaid salaries of teachers and other employees amount to $25,600,000. For the current year 1934 the board has obligations for teachers' salaries and educational expenses in the sum of $25,000,000. There are past-due claims amounting to $3,800,000, making a total of $54,-400,000. There is no money in the treasury with which to meet these obligations. In 1930 the General Assembly, recognizing the credit impairment of certain municipalities and the necessity for raising cash to pay current liabilities, enacted a law which provided for the creation of a revolving fund out of the proceeds of the sale of bonds in the sum of $25,000,000. The board of education of Chicago availed itself of that law. In the long duration of

the depression the fund so created became exhausted, and in 1933 the legislature added section 134¾ to the School act. (Cahill's Stat. 1933, chap. 122, par. 158(2.) This added section provides that in all cases where the board of education in cities having a population exceeding 500,000 inhabitants shall have heretofore created a working cash fund pursuant to section 134½ of the act, it may incur an indebtedness for the purpose of increasing such fund and issue bonds therefor in an amount not to exceed $40,000,000. Under conditions and limitations specifically set forth, the proceeds from the sale of the bonds are to be placed in that fund and are not subject to appropriation or budget expense. The board may, however, by resolution direct the transfer of money from that fund to the educational purposes fund. Provision is made for the restoration of the working cash fund from taxes and other revenues, when collected.

In support of defendant's contention that the board of education is not a distinct corporate entity and that it has no bonding power, it is said that the statute makes the boundaries of the school district here involved co-terminus with those of the city of Chicago; that the city treasurer is made the *ex-officio* treasurer of the school district; that the city council is required to make the tax levy for school purposes, and that the bonds are required to be counter-signed by the mayor and comptroller.

The power of the legislature in this State to create public corporations is practically unlimited. It may create any conceivable kind of corporation it sees fit for the more efficient administration of public affairs and endow such corporation and its officers with such powers and functions as it deems necessary and proper for the administration of the corporate affairs. (*People* v. *Bowman,* 247 Ill. 276; *Perkins* v. *Cook County Comrs.* 271 id. 449.) The whole legislative power of the State being conferred by the constitution upon the General Assembly, every subject with-

in the scope of civil government not withdrawn from its authority may be acted upon by that body. The constitution contains no restriction against the creation of school districts as municipal corporations. The education of the youth is one of the paramount objects of government. For a number of years the maintenance of public schools in the city of Chicago was a function of the city government, but in 1917 the general School law was amended and a school district composed of the same territorial limits as the city of Chicago was created by statute and made a body politic and corporate by the name of "Board of Education of the city of Chicago." (Cahill's Stat. 1933, chap. 122, sec. 128, par. 152.) As a body corporate it was empowered to levy taxes and issue bonds for school purposes. The fact that some of the city officers are *ex-officio* officers of the board of education is of no consequence in determining whether or not the board of education has a corporate existence. The General Assembly had the power to make the board a body politic, and it did so. Instances are numerous where the territory of one municipal corporation is superimposed upon another. The boundaries of one may be either greater, smaller or co-terminus with the other. The identity of territorial limits of overlapping corporations is immaterial if the corporations have separate and distinct governmental purposes. (*Wilson* v. *Board of Trustees*, 133 Ill. 443.) Each corporation may contract corporate indebtedness up to its constitutional limitation without reference to the indebtedness of any other corporation embraced wholly or in part within its territory. (*Highway Comrs.* v. *City of Bloomington*, 253 Ill. 164.) In *Mathews* v. *City of Chicago*, 342 Ill. 120, the question was raised as to whether or not bonds issued to create the working cash fund were the obligations of the city of Chicago or the board of education, and it was held that they were the obligations of the board of education and not of the city.

We hold that the board of education of the city of Chicago is a body politic and corporate; that it has bonding powers under section 134¾ of the above mentioned statute; that it has its own limit of indebtedness under the constitution which is not affected by the indebtedness of the city of Chicago, and that the proposed bond issue does not violate section 12 of article 9 of the State constitution.

To defendant's contention No. 2, that the proceeds of the bonds would provide an unnecessary accumulation of money in the public treasury, we cannot agree. It is admitted that for the current year $25,000,000 is needed for payment of teachers' salaries and other necessary current expenses, and that $28,000,000 is needed for the payment of salaries and other necessary expenses in arrears.

But it is claimed that the last mentioned item is not a current expense, and that the intention of section 134¾ was to provide means for payment of current expenses, only. There is no substantial basis for this claim because it is provided by section 135½ that the board of education shall adopt an annual school budget and provide by appropriation for the payment of all unpaid bills of prior years. It is therefore evident that indebtedness of this character of previous years is carried forward as a current liability and must be appropriated for in each annual school budget. The purpose for which the money is to be used is not uncertain but is definite and specific.

Defendant's last contention is that the legislature may not grant power to mortgage school lands because the purpose sought is in violation of section 2 of article 8 of the State constitution, which is as follows: "All lands, moneys, or other property, donated, granted or received for school, college, seminary or university purposes, and the proceeds thereof, shall be faithfully applied to the objects for which such gifts or grants were made."

The title to all school lands in said district is in the city of Chicago in trust for the use of the schools. The

Fifty-eighth General Assembly of the State of Illinois convened in extraordinary session in the year 1934, such session being known as the third special session of the Fifty-eighth General Assembly, and passed a certain bill entitled, "An act to authorize the board of education of any school district constituted by law in any city having a population exceeding 500,000 inhabitants to mortgage its school lands as additional security for the payment of its bonds to be sold to any agency, instrumentality, corporation, administration or bureau of the United States of America." (Laws of 1933-34, p. 243.) This act was approved by the Governor on February 28, 1934. It contained an emergency clause, and having received the requisite number of votes in both houses became effective on that date. The only lands authorized by the General Assembly to be mortgaged as security for bonds are those which are not used for school purposes. It is argued that while such lands may be sold and the proceeds applied to school purposes, it does not follow that the General Assembly may permit school lands to be mortgaged as security for the payment of bonds issued for the purpose of increasing the working cash fund. The creation of that fund is essentially for school purposes. Schools cannot be maintained unless teachers are paid. The plan adopted by the General Assembly to meet the present difficulties in maintaining schools was approved by this court in *Mathews* v. *City of Chicago, supra*. If it be granted that school lands may be sold and the proceeds used for school purposes, no good reason can be given for denying the power to mortgage lands to obtain money to use for the same purpose. The board, under legislative sanction, may authorize the sale, lease or encumbrance of any school lands not used or necessary for school buildings or playground purposes.

It was and is the duty of the city comptroller to affix his signature to the bonds mentioned in the petition. Therefore the writ of *mandamus* is awarded as prayed.

*Writ awarded.*