HOUSE, Appellant, v. SCHOOL DIST. NO. 4 of PARK COUNTY et al., Respondents.

No. 8760

Submitted June 18, 1947. Decided September 4, 1947.

184 Pac. (2d) 285

Mr. Ben E. Berg, Jur., of Livingston, and Mr. Wesley W. Wertz, of Helena for appellant.

Mr. Richard A. Bodine, of Livingston, Mr. R. V. Bottomly, Atty. Gen., and Mr. Robert L. Word, Jr., Sp. Asst. Atty. Gen., for respondent.

MR. JUSTICE CHOATE delivered the opinion of the Court.

This action was brought by plaintiff and appellant in the district court of Park county to enjoin the sale of bonds of school district No. 4 of said county in the amount of $325,000. The trial court sustained defendants' demurrer to the complaint and motion to quash the order to show cause, and entered judgment of dismissal of the action.

*The facts.* School district No. 4 of Park county is a second class school district regularly organized under the laws of Montana. Park county high school district is a high school district

regularly organized under the laws of said state. The exterior boundaries of school district No. 4 (hereinafter designated as the school district) lie entirely within the ·boundaries of the Park county high school district (hereinafter referred to as the high school district) and the territory which comprises the school district is a part of that which comprises ·the high school district. Defendants in the action are the school district, its clerk and the members of its board of trustees. The qualified electors of the school district, by majority vote, have authorized the board of trustees of the school district to issue the bonds in question for the purpose of erecting a new elementary school building and to build an addition to a school in said district. The board of trustees has sold the bonds and contracted to deliver them to the purchaser on or before July 1, 1947. It is conceded that said board will, unless restrained by injunction, proceed to execute and deliver the bonds in question and that as a result thereof the plaintiff's property will be subject to a tax to pay the principal and interest of said bonds.

The assessed value of the property lying within and taxable by the school district is $11,754,542, and three per cent of that valuation is $352,636. The school district has no outstanding indebtedness of any kind. The high school district has an outstanding bonded indebtedness of $99,000. The taxable value of the property lying within and taxable by the school district comprises 59 % of the taxable value of the property within the high school district. It is therefore apparent that if, in computing the amount of bonds which may legally be issued by the school district under the 3 % constitutional limitation hereinafter considered, it is *not* necessary to take into consideration any part of the $99,000 indebtedness of the high school district, then the proposed school district bond issue will not exceed the constitutional debt limit. If, however, 59 % of the oustanding indebtedness of· the high school district *must* be apportioned to the school district, such apportionment will amount to $58,410 and if bonds of the school district are issued in the amount of $325,000, such

bonds when added to the school district's proportionate share of the indebtedness of the high school district ($325,000 plus $58,-410) will exceed the constitutional debt limit by the sum of $30,774.

The sole question for determination on this appeal, therefore, is whether the indebtedness of the high school district must be considered in computing the debt limit of the school district.

*The law.* Section 6 of Article XIII of the Constitution of Montana reads in part as follows: "No * * * school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three (3) per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such * * * school district shall be void."

Chapter 275 of the Laws of the 30th legislative assembly of Montana of 1947, provides that to effectuate the purposes of the Act (a program of public works for the construction of high school buildings etc.) "in all counties having a high school, or high schools, a commission consisting of the county commissioners and the county superintendent of schools shall at the request of any high school board of trustees in the county, divide the county into high school districts for the purpose of this act, after hearing."

Provision is made for a meeting of the commissioners and for a public hearing on the requested division of the county into high school districts.

Section 3 of the Act reads as follows: "Each high school district created under this chapter shall be a corporation separate from the common school districts included therein. The boards of trustees of high school districts established under this act are hereby vested with the power and authority to issue and negotiate bonds on the credit of the high school districts in conformity with and for any one or more of the purposes provided in

Section 1224.1, Revised Codes of Montana, 1935, and Amendments thereof, and to the full amount permitted by Section 6 of Article XIII of the State Constitution *irrespective of the debt of the common school districts.*" (Emphasis ours.)

It will be seen from the foregoing portion of Chapter 275, Laws of 1947, that it makes provision for the division of counties having a high school or high schools into high school districts, each of which districts is a corporation separate from the common school districts included therein. The act authorizes each of these high school districts as well as those created under sections 1301.1 to 1301.6, Revised Codes of Montana 1935, as amended, to issue bonds under section 1224.1, Revised Codes, "to the full amount permitted by Section 6 of Article XIII of the State Constitution irrespective of the debt of the common school districts."

Chapter 275, Session Laws of 1947, makes no change in the existing law with respect to the issuance of bonds by *school districts.* So far as the 1947 Act is concerned the limitation on the amount of bonds which school districts may issue still remains as fixed by section 1224.2, Revised Codes of Montana, 1935, namely, "3% of the value of the taxable property therein," which is the same limitation fixed by section 6 of Article XIII of the Montana Constitution. The case at bar does *not* involve the issuance of bonds by a high school district, hence the provisions of section 3 of Chapter 275, which pertain only to bond issues by high school districts, are not controlling in the present action. What *is* controlling in the case at bar is the effect of section 6 of Article XIII of the Constitution of Montana as applied to bond issues by *school districts.*"

As a preliminary approach to the question presented on this appeal it should be borne in mind that this court has held that the rule of strict construction must be applied to the constitutional provision in question and any doubt as to the existence of the power sought to be exercised must be resolved against the right of a city to contract indebtedness. Palmer v. City of Helena, 19 Mont. 61, 68, 47 Pac. 209; State ex rel. Helena W.

W. Co. v. City of Helena, 24 Mont. 521, 537, 63 Pac. 99, 55 L. R. A. 336, 81 Am. St. Rep. 453; Butler v. Andrus, 35 Mont. 575, 583, 90 Pac. 785, 787. The same principle of law, of course, applies to a school district. However the rule of strict construction and the principle of denial of power in the case of doubt as to its existence do not forbid us to examine the Constitution to determine whether the rule against the exercise of power is properly invoked.

Also we should not lose sight of the equally cogent and well- established rule that the constitutionality of a statute will be upheld if possible and that a statute will not be declared unconstitutional unless clearly so or so beyond a reasonable doubt. Mullholland v. Ayers, 109 Mont. 558, 567, 99 Pac. (2d) 234; State v. Cunningham, 39 Mont. 197, 103 Pac. 497, 18 Ann. Cas. 705; Spratt v. Helena Power Transmission Co., 37 Mont. 60, 94 Pac. 631; Hill v. Rae, 52 Mont. 378, 158 Pac. 826, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210; Hilger v. Moore, 56 Mont. 146, 182 Pac. 477, and many similar Montana cases cited in vol. 3, Mont. Dig., Constitutional Law, West Reporter 48, page 445.

The question as to the effect upon constitutional debt limits of the existence of separate political units with identical or overlapping boundaries is considered in an exhaustive case note in 94 A. L. R. beginning at page 818, following the Illinois case of Board of Education v. Upham, 357 Ill. 263, 191 N. E. 876, in which the Illinois Supreme Court held that each of several corporations may contract corporate indebtedness up to its constitutional limitation without reference to the indebtedness of any other corporation embraced wholly or in part within its territory and that in determining whether the debt limit will be exceeded in issuing bonds of a school district, the indebtedness of a city having the same territorial limits as the district is not to be taken into account.

The author of this case note states the general rule supported by numerous authorities when the boundaries of separate political units are *identical* as follows: ''The general rule is that in

applying constitutional or statutory debt limit provisions to separate and distinct political units with identical boundaries, exercising different functions, only the indebtedness of the political unit in question can be considered and the debts of the other independent political units should be excluded.''

In the case at bar the boundaries of the high school district are not identical with the boundaries of the school district since the exterior boundaries of the latter lie entirely within the boundaries of the former. We therefore think it unnecessary to consider the rule above announced further than to note that the rule is the same in the case of political units having *identical* boundaries as in the case of those having *overlapping* boundaries.

In the case of political subdivisions having overlapping boundaries the rule is stated by the above author as follows: ''In most of the cases involving the question the same rule has been applied in the case of overlapping boundaries as in the case of identical boundaries so that in determining the debt limit of a political unit as prescribed in the constitutional or statutory provision applicable thereto, the indebtedness of another separate and independent political unit which embraces part of or more than the territory of the former unit, is not to be taken into consideration.'' 94 A. L. R. 824.

The following cases arising under constitutional provisions similar to ours support the rule above stated with respect to political subdivisions having overlapping boundaries:

Fiedler v. Eckfeldt, 335 Ill. 11, 166 N. E. 504, 512. This case was decided under a constitutional provision identical with ours except that the limit of the indebtedness was 5 % of the taxable property in the district instead of 3 %. Const. of Illinois, Art. IX, sec. 12, Smith-Hurd Stats. In that case the court held that the indebtedness of a school district which made up Bloom township high school district need not be considered in determining the limitation of indebtedness of Bloom township high school district. After a full discussion of the issues involved the court said: ''The constitutional limitation invoked in this case

is *not* that no part of the territory of a school district shall become liable for an indebtedness to an amount, including existing indebtedness, in the aggregate exceeding 5 per centum on the value of the taxable property therein, but *is* that no school district shall be allowed to become indebted to such an amount. * * * The high school district is a district separate from any of the school districts, whose territory is included in whole or in part within the high school district. The bonds, when issued, will be the obligations of the high school districts, *only* and *not of any of the other districts.*" (Emphasis supplied.)

Wilson v. Board of Trustees of Sanitary District, 133 Ill. 443, 27 N. E. 203, 210. Held that a constitutional provision identical with ours (except for 5% limit instead of 3%) did not affect a sanitary district as to the amount of indebtedness it may incur by reason of the indebtedness of other municipal corporations covering part of its territory. In commenting on the constitutional provision the court said: "It would be difficult to employ language making it plainer that the prohibition' is on each corporation singly, and not upon two or more in the aggregate."

Fall v. Read, 194 Ky. 135, 238 S. W. 177. Held that a constitutional provision similar to ours did not require that the outstanding indebtedness of a city be considered in ascertaining the indebtedness of a grade school district of which the city constituted a part.

Straw v. Harris, 54 Or. 424, 103 Pac. 777, 781. This case involved the constitutionality of the incorporation of the Port of Coos Bay for the improvement of navigation and the effect of including within its boundaries four incorporated towns. While the facts differ from those in the case at bar, the court's comments on the provisions of the Oregon Constitution limiting the debt-contracting powers of counties and cities are pertinent to our present case.. "The right to form the larger municipalities must of necessity carry with it the power to include those more limited in territory regardless of the proportionate increase in

the indebtedness and taxation to follow that may necessarily accrue to the included towns by reason thereof. The limitation placed upon the corporations enumerated applies only to each standing as a separate and distinct political division, and not to another and larger municipality of which they may form but an integral part.''

McQuillin on Municipal Corporations, 2nd Ed., section 2373 (sec. 2214, 1st Ed.), states the law as follows: ''The constitutional limitation concerning corporate indebtedness usually applies to each municipal corporation separately and where one corporation embraces in part the same territory as another or others, each may contract a corporate indebtedness up to the constitutional limit without reference to any other corporation embraced wholly or in part within its area unless the contrary is expressed in the Constitution.'' The author cites a number of supporting authorities of which the following are representative: People v. Honeywell, 258 Ill. 319, 101 N. E. 571, 572, involving indebtedness of a drainage district partly within the limits of the city of Hoppeston. The court said: ''This court held that the constitutional limitation upon the extent of corporate indebtedness applies to each municipal corporation singly, and that where one corporation embraces, in part, the same territory as others, each may contract corporate indebtedness up to the constitutional limitation, without reference to any other corporation embraced wholly or in part within its territory.''

Follett v. Sheldon, 195 Ind. 510, 144 N. E. 867, 873. This case involved a bond issue affecting a so-called ''school town'' and a so-called ''civil town,'' the limits of which were co-terminus. The opinion of the court said: ''It is well settled that, where two or more municipal corporations cover all or a part of the same territory, the debts of all are not to be aggregated or considered in determining the borrowing capacity of any one.''

In 44 C. J. 1190, section 4161, the law is stated as follows: ''In computing the existing bonded indebtedness of a muncipality for the purpose of determining whether it equals or exceeds the

limit prescribed by law so as to preclude another issuance of bonds, it is proper to exclude * * * bonds issued by another political subdivision such as a county, town, or school district whose territory is co-extensive in whole or in part with that of the municipality.'' Citing authorities, including Winstead v. Williams, 132 S. C. 365, 128 S. E. 46, in which it was held that a city may issue bonds to the full 8 % limitation regardless of the bonded debt of other political subdivisions covering the city in whole or in part.

Some contrary decisions will be found, particularly from Connecticut, whose debt limitation statute differs materially from ours, and from Texas where a different conclusion was reached. There is, however, no question but that the majority opinion under constitutional provision either identical with or similar to ours is in accord with the conclusions herein expressed. These holdings as we have indicated are based on the following considerations:

First, that section 6 of Article XIII of our Constitution is a limitation upon the *debt-incurring* powers of school districts (and other political subdivisions) and is *not* a prohibition against making a part of the territory of a school district or of a high school district liable for an indebtedness in excess of 3 % of the value of the taxable property therein.

Second, the debt of Park county high school district is an obligation of that district and of it alone. It has nothing to do with the indebtedness of the school district nor does the indebtedness of the school district form any part of the indebtedness of the high school district. Therefore, each political subdivision may issue bonds without reference to the obligations of the other.

Third, in the case of either identical or overlapping school districts (or other political subdivisions of the state) the constitutional limitation concerning the incurring of indebtedness is uniformly held to apply to each political subdivision separately and each may contract indebtedness up to the constitutional

limit without reference to any other corporation embraced wholly or in part within its area.

Further, there is nothing in our Constitution which prohibits the legislature from enacting into law as it has done by Chapter 275, Session Laws of 1947, the same rule for the interpretation of section 5 of Article XIII of the Constitution, which the courts, in the cases herein cited, have applied, namely, that both high school districts and school districts may issue bonds up to their constitutional debt limit irrespective of the debts of the other. As said by the Maine court in Kelley v. Brunswick School District, 134 Me. 414, 187 A. 703; 707, ''The courts may not absent express constitutional limitations, entirely deny the power of the legislature to create, wholly or partly, in town or city limits, different public corporate bodies, and to make clear that their debts are to be regarded as those of independent corporations.'' Citing authorities.

It is our conclusion that the outstanding obligations of Park county high school district do not effect the debt limit of school district No. 4 of Park county and that the proposed bond issue in the amount of $325,000 is within the debt limit of the school district. The demurrer and motion to quash interposed by defendants to plaintiff's complaints were properly sustained and the complaint properly dismissed.

Judgment affirmed.

Associate Justices Cheadle and Metcalf concur.

Mr. Chief Justice Adair (dissenting).

*Taxing Districts.* As to all taxation apportioned upon property there must be *taxing districts.* The *taxing district* may be the entire state, or it may be a county, a city, a town, a township or a school district. A state tax is to be apportioned through the state and a county tax through the county. School districts are taxing districts for the special and peculiar purposes for which they exist.

*Uniformity Required.* Within these *taxing districts* the rule of absolute uniformity must be applicable.

Two essentials are required to render taxation uniform.

The first essential is that each *taxing district* shall confine itself to the objects of taxation within the limits of the *taxing district*. Otherwise there may be duplicate taxation resulting in inequality. Therefore assessments upon real property not situate within the *taxing district* would be void, and assessments for personal property against owners not residing in the district would be void unless made upon personal property actually present within such *taxing district*.

The second essential is that there should be a uniform manner of assessment and approximate equality in the amount of tax exactions within the *taxing district*.

The rule of apportionment must be uniform throughout the *taxing district,* applicable to all alike and the legislature does not possess the power to create or establish *taxing districts* arbitrarily, and without reference to the fundamental principle that the burden of taxation must be borne by those upon whom it justly rests. Thus the property which is properly included within the limits of the taxing district should be so included by the legislature because such property justly belongs there as being fairly within the *taxing district* which is benefited by the local government and which therefore ought to contribute to its tax burdens.

The Constitution of Montana prohibits various commonly recognized local *taxing districts* from creating an indebtedness in excess of three per centum of the value of the taxable property in such district. The *taxing districts* mentioned are cities, towns, townships and school districts. Section 6 of Article XIII declares: "No city, town, township or school district shall be allowed to become indebted *in any manner* or *for any purpose* to an amount, including *existing* indebtedness, in the *aggregate* exceeding three (3) per centum of the value of the taxable property therein." (Emphasis mine.) An exception is provided for towns and cities *to* construct a sewerage system or procure a water supply. The penalty provided for violating the above section of the Constitu-

tion is that all bonds or obligations in excess of such amount given by or on behalf of the *taxing district* shall be void.

The words used in section 6 of Article XIII of the Constitution are simple words having well understood meaning. "City" and "town" include all classes of cities and towns as *taxing districts*. "School districts" includes all kinds of public school districts and public common schools as *taxing districts*. The words "in any manner or for any purpose" apply to any plan, scheme or device whereby taxes are to be imposed for school purposes of any kind upon the property lying within a school district to meet or pay an aggregated debt "including existing indebtedness" of three per centum of the value of the taxable property in such school district.

"A public school is a school established and maintained under the laws of this state at public expense and comprising the elementary grades, *and, when established,* the kindergarten and *the high school including all the junior and senior grades of high school work.*" (Emphasis mine. Section 1053, Revised Codes.)

"A high school is a public school as defined in the general school laws and is an integral unit of the public school system which comprises some one or more of the grades of school work intermediate between the elementary schools and the institutions of higher education of the state of Montana, and which has its own administrative head and corps of teachers under the direct supervision either of a district superintendent and the board of trustees of a school district, or of a county high school principal and board of trustees of such county high school, as the case may be." Section 1262.1, Revised Codes of 1935. See also Young v. Board of Trustes, 90 Mont. 576, 4 Pac. (2d) 725; and the Note in 113 A. L. R. 702.

"A school district is merely a political subdivision of the state, created for the convenient dispatch of public business. In the absence of constitutional limitations, the Legislature may create or abolish a district or change or rearrange the boundaries of

an existing district, and by the same token it may create joint districts from territory lying in adjacent counties.'' State ex rel. Redman v. Meyers, 65 Mont. 124, 127, 210 Pac. 1064, 1065. However, the legislature is bound by the restrictive limitation upon the power of a school district to create debt imposed by section 6 of Article XIII of the Constitution and it is powerless to relieve the school district of such limitation.

Had the framers of the Constitution intended that property lying within high school districts or within school districts included within the boundaries of high school districts could be excepted from the three percent restriction imposed by section 6 of Article XIII of the Constitution, they would have written in such exception as was done in the special provision relating to the construction of sewerage systems and to the procuring of a supply of water for municipalities. The rule ''expressio unius est exclusio alterius'' applies. See 35 C. J. S. p. 283, Note 57, and case cited; 59 C, J., sec. 582, p. 984; Sutherland, Statutory Construction, 3rd Ed., sec. 4916 and cases in note 2 thereof; State v. State Board of Equalization, 100 Mont. 72, 45 Pac. (2d) 684.

*Illinois Cases.* The majority opinion herein cites with approval certain decisions of the Illinois Supreme Court including Wilson v. Board of Trustees of Sanitary District, 133 Ill. 443, 27 N. E. 203, 210 and Fiedler v. Eckfeldt, 335 Ill. 11, 166 N. E. 504.

The Wilson case, supra, involved an act for the creation of a sanitary drainage district and the opinion is based upon the construction of section 9 of Article 9 of the Illinois Constitution, giving cities and towns power to make local improvements by special·assessments of contiguous property or otherwise, rather than on section 12 of Article 9 of the Constitution of Illinois which is similar in its provisions to section 6 of Article XIII of the Constitution of Montana except that the limit in Illinois is five per cent instead of three per cent as in Montana and the Illinois section contains no provision empowering the legislature to extend the limit mentioned by authorizing municipal corpora-

tions to incur additional indebtedness for the construction of sewers and procuring a supply of water. It would appear that the majority opinion in the Wilson case, supra, is either erroneous or dictum in its statements respecting section 12 of ·Article 9 of the Constitution of Illinois and that thereafter the court erred in following the Wilson case as a precedent on this question in the Fiedler case, supra.

The Wilson case, supra, was distinguished in the subsequent case of Russell v. High School Board, 212 Ill. 327, 72 N. E. 441, 443, wherein the court held that a statute authorizing a school district having a population of at least 2,000 to establish and maintain a high school, was ineffectual to authorize the district ,to incur a debt for such purpose where the amount, plus the existing indebtedness of the school district, would exceed the constitutional limit of five per cent. The issuance of the bonds was enjoined, the court saying: "If the Legislature, by authorizing a school district to establish a high school, can also authorize it to incur indebtedness beyond the constitutional limit, they could get rid of all the restrictions of the Constitution by authorizing the management of each grade or department of the public school by a different board of education, with different buildings. Such a construction of our Constitution has never been adopted."

The Russell case, supra, was approved and the rule there announced, quoted and followed in People v. Read, 233, Ill. 351, 84 N. E. 214. Again the Russell case was cited with approval in People v. Young, 309 Ill. 27, 139 N. E. 894, 896.

In Fiedler v. Eckfeldt, supra, 335 Ill. 11, 166 N. E. .504 at page 511, the Illinois court attempts to distinguish, but does not overrule either the Russell case, supra, or the Read case, supra, both of which are applicable to the facts in the case now before this court.

Again, in Kocsis v. Chicago Park Dist. 362 Ill. .24, 198 N. E. 847, at page 854, 103 A. L. R. 141, the Illinois court distinguishes the Russell and the Read cases, but does not overrule them and, after quoting section 12, Article 9 of the Illinois Constitution

at page 852, of 198 N. E., said: "This court has frequently stated that the object of the constitutional provision against any municipal corporation becoming indebted in excess of 5 per cent. of the assessed valuation of property is to protect the property of citizens from being burdened with such excess indebtedness extending into the future. Any plan or scheme which has the effect of creating such a burden is prohibited, no matter how the indebtedness is created. Green v. Hutsonville Tp. High School District, 356 Ill. 216, 190 N. E. 267; Wade v. East Side Levee Dist., 320 Ill. 396, 151 N. E. 260; People v. Chicago & Alton Railroad Co., 253 Ill. 191, 97 N. E. 310."

In Green v. Hutsonville Tp. High School Dist. cited in the above quotation and involving the indebtedness of a *school district,* the court said [356 Ill. 216, 190. N. E. 268] : "In discussing this constitutional prohibition, this court has made itself very clear, and there can be no reason for doubting our position in the matter. We have held that it makes no difference under what guise or by what sort of trick the attempt is made, an indebtedness in excess of the constitutional limit cannot be voluntarily created. It was the intention of the framers of our Constitution that the property of citizens should not be burdened beyond the 5 per cent. limitation, and that no plan or scheme can be permitted to create an indebtedness in excess of that amount."

In People v. Orvis, 374 Ill. 536, 30 N. E. (2d) 28, 132 A. L. R. 1382, an act of the legislature attempting to validate the bonds held void in the Green case, supra, approved the latter case and held such act unconstitutional. The Green case, supra, was also approved on this point in Leviton v. Board of Education of City of Chicago, 374 Ill. 594, 30 N. E. (2d) 497, 501.

In Board of Education v. Upham, 357 Ill. 263, 191 N. E. 876, 94 A. L. R. 813, cited by the majority opinion herein the Illinois court again cites the Wilson case, supra, as supporting its position. The Upham case, supra, is clearly distinguishable. There the board of education was authorized to issue bonds and it was contended such bonds would be an indebtedness of the city and

that, when added to the city's indebtedness, such bonds would exceed the city's 5% limit authorized by section 12, Article 9 of the Illinois Constitution. The court merely held that the board of education was a separate corporation from the municipal corporation and that the *city's indebtedness* could not be included in determining whether the school authority had exceeded the 5% limit imposed upon *school districts*. It is manifest that under section 6, Article XIII of the Montana Constitution, a city as a *taxing district* for municipal purposes, and a school district as a *taxing district* for school purposes, may each incur indebtedness up to three per cent and that the indebtedness of the one can not be considered in determining the limit of indebtedness of the other. See: Leply v. City of Fort Benton, 51 Mont. 551, 154 Pac. 710; Farbo v. School District, 95 Mont. 531, 28 Pac. (2d) 455.

In the case at bar it is not a question of including the indebtedness of a city or town for municipal purposes with indebtedness of a school district for school purposes, as in said Upham case, supra, but, in the case now before us, all the indebtedness to be incurred is for *school purposes only* in the territory embraced in such district, which, with existing indebtedness for such purpose, exceeds the constitutional limit of three per cent. Under our Constitution this cannot be done, ''in any manner or for any purpose'' to an amount in the aggregate ''exceeding three per centum (3) of the value of the taxable property therein.'' In Butler v. Andrus, 35 Mont. 575, 90 Pac. 785, 786, in construing this section, Chief Justice Brantly, speaking for the court, said: ''The constitutional limitation in question is clear and unambiguous, and means just what it says, to wit, that no indebtedness may be contracted in any manner or amount, for any purpose, in excess of the prescribed limit.''

In the note to the case of the Board of Education of the City of Chicago v. Upham, supra, 94 A. L. R. 818-826, the author says the general rule is that the indebtedness of ''*separate and distinct political units* with identical boundaries, *exercising dif-*

*ferent functions,* only the indebtedness of the political unit in question can be considered" (94 A. L. R. at page 819) and that this same general rule applies to overlapping boundaries (94 A. L. R. at page 824). Most of the cases cited in this note are based on this general rule. The Montana Constitution classifies these *distinct taxing districts* or political units as "city, town, township or school district." Sec. 6, Art. XIII, Const. A public school, whether a district school, a junior high school, a district high school, or a county high school, is one taxing district for school purposes and one political unit under the broad term "school district" as used in our Constitution. See: Russell v. High School, supra, discussed above. It is as broad as the term "common school," defined in School District No. 20 v. Bryan, 51 Wash. 498, 99 Pac. 28, 29 L. R. A., N. S., 1033. See also sections 1053 and 1262.1, Revised Codes of Montana, 1935.

In People v. Chicago & N. W. R. Co., 286 Ill. 384, 121 N. E. 731, 733, the court in construing a constitutional provision like section 1, Article XI of our Constitution said: "The high school is as much a part of our system of free schools as the district or grade schools." Citing several Illinois cases. See also: People v. Pinari, 332 Ill. 181, 163 N. E. 385; State v. Dawson County, 87 Mont. 122, 286 Pac. 125; Young v. Board of Trustees, 90 Mont. 576, 4 Pac. (2d) 725; Fitzpatrick v. State Board of Examiners, 105 Mont. 234, 70 Pac. (2d) 285; State v. Meyers, 65 Mont. 124, 210 Pac. 1064; Note in 113 A. L. R. 702-707.

In the instant case it is not a question of the debt being that of the Park County High School only or of School District #4 in Park county only, in determining whether the constitutional limitation has been exceeded. The question is, does 59% of the debt of the Park County High School, based on 59% of taxable property in School District #4 in Park County, plus the debt created by the proposed bond issue of said district in the aggregate, exceed 3% of the value of the taxable property included in such school district?

It is immaterial to the taxpayer in the taxing district for

common public school purposes as to which school district is legally liable on the respective bond issues as the taxpayer is required to pay the taxes assessed by each overlapping school district against his property and if these combined debts, for schools, exceed 3 % of the taxable value of his property, his rights guaranteed by section 6 of Article XIII of the Constitution of Montana have been violated as the Constitution says this cannot be done "in any manner or for any purpose." See also Munson v. Looney, 107 Tex. 263, 172 S. W. 1102, 177 S. W. 1193.

For example, should the legislature, under section 7 of Article XVI of the Constitution, create a city administrative board or commission and also a separate board each for a park commission, for a fire department, and for a police department, with authority in each department to incur indebtedness and levy taxes for necessary work, improvements or equipment therein, then according to the theory of the majority opinion herein each of these separate city departments could incur a separate indebtedness up to the constitutional limit of 3 % of the value of the taxable property in the city and the taxpayer's property would be liable for the full amount of such taxes, for the reason that the separate liability of each of these separate boards would not exceed 3 % thereof. Such construction would effectively nullify the constitutional prohibition and limitation in section 6, Article XIII.

The majority opinion herein would permit the taxpayer in the same taxing district for school purposes to be taxed up to three per centum of the value of the taxable property therein for each of the following school districts, namely: (1) For a nursery school district, (2) for a primary school district covering grade one, (3) for an elementary common school district covering grades two to six inclusive, (4) for a junior high school district covering grades seven, eight and nine (Sec. 1262.2, Revised Codes), and (5) for a high school district comprising grades between the elementary schools and the institutions of higher education of the state (Sec. 1262.1, Revised Codes). By such meth-

cds the three per cent limit placed by the people of this state in their Constitution would be read out of the Constitution and the property of the taxpayers in the school district could be subjected, for public common school purposes, to a tax exceeding 15 or more per centum of the taxable value of the property therein. In fact, by simply creating new school districts under new and different names or designations, the entire constitutional limitation imposed by section 6 of Article XIII of the Constitution could be made a dead letter and eliminated from the Constitution. This would be a "manner" of doing things which the Constitution in section 6 of Article XIII says cannot be done to the taxpayers in these separate taxing districts whether the district be a city, town, township or school district.

The proneness of local taxing districts such as municipalities and school districts to incur indebtedness, if its burden can be cast upon posterity, was well known to the framers of our state constitution and they saw the need, in the interest of the public welfare, to regulate, restrict and limit the power of such taxing districts to incur large and unreasonable debts. Divers devices have been resorted to for the purpose of preventing the incurring of inconsiderate, extravagant and onerous indebtedness on the part of such *taxing districts*. The means to accomplish this end employed by those who drafted our Constitution was by placing a constitutional limitation on the power of each of such *taxing districts* to incur debt. Thus the purpose of section 6 of Article XIII of our Constitution is to serve as a limit on taxation and as a protection to taxpayers. When construed and applied as written it serves to effectually protect persons residing in *taxing districts* from the abuse of their credit and the consequent oppression of burdensome, if not ruinous, taxation. Such constitutional limitations on indebtedness are construed as prohibitory, mandatory, self-enforcing and are to be observed strictly. A statute may limit a constitutional limit but may not raise or extend it.

The case at bar presents an attempt to evade the debt limit

provisions imposed upon the *taxing district* designated as a school° district by indirect methods and this the Constitution declares shall not be done "in any manner or for any purpose." Sec. 6, Article XIII, Const. of Montana.

It is clear to me that the high school bonds and the proposed issue of bonds by School District #4 in Park County, all being in the same *taxing district* for public school purposes and in the same district political unit designated in section 6 of Article XIII of the Constitution of Montana, and imposing an aggregate indebtedness on the property of the taxpayers in School District #4 in excess of three per cent of the taxable property therein, are void to the extent that said proposed bond issue exceeds such three per cent limit.

In my opinion, therefore, the complaint states a good cause of action. The defendants' demurrer should have been overruled. The judgment for defendants was erroneous. Such judgment should be reversed.

Mr. Justice **Angstman** (dissenting).

I dissent.

I think the scheme provided for by Chapter 275, Laws 1947, is subject to the condemnation made to a similar Act by the Supreme Court of Illinois in Russell v. High School Bd. of Ed., 212 Ill. 327, 72 N. E. 441, 442, where the court said:

"The establishment of the high school by the school district under the control of a different board of education was a mere division of existing powers of the school district between two boards of education. What the new board of education can do the district was already authorized to do through the existing board of education. If the Legislature, by authorizing a school district to establish a high school, can also authorize it to incur indebtedness beyond the constitutional limit, they could get rid of all the restrictions of the Constitution by authorizing the management of each grade or department of the public school by a different board of education, with different buildings. Such a construction of our Constitution has never been adopted.

. ''Even if it could. be said that there are two corporations covering the same territory, the creation of the new one would be nothing but a division or redistribution of existing powers under the school law, and in Wilson v. Board of Trustees, 133 Ill. 443, 27 N. E. 203, it was said that the organization of the sanitary district was essentially and palpably different from the creation of new corporations vested with some of the functions of local government of pre-existing municipal corporations. It was within the power of the Legislature to provide for the establishment of a high school under the control of a board of education elected for that purpose; but they could not, by multiplying the boards of education in the same territory, authorize the district to incur indebtedness beyond the constitutional limit.''

That same rule was followed in People v. Read, 233 Ill. 351, 84 N. E. 214.

It is true that in the later case of Fiedler v. Eckfeldt, 335 Ill. 11, 166 N. E. 504, the court sustained a bond issue under facts somewhat similar to those here. I think though there were facts in the Fiedler case which made it different from the case before us. In the Fiedler case there was created a bona fide school district to operate a high school. Here if a school district was created it was for the limited purpose of constructing, improving and repairing buildings and not for operating a school.

In considering the validity and effect of Chapter 275, Laws 1947, it is important to bear in mind the state of the law at the time it was enacted and thereby ascertain its purpose. Chapter 275 is practically a carbon copy of section 1301.1 et seq., of the Revised Codes of 1935, being Chapter 47, Extraordinary Session laws of 1933.

We have held that Chapter 47, Extraordinary Session 1933, was valid as an emergency measure designed to furnish employment. But whether the scheme could be used to circumvent section 6, Article XIII of the Constitution, was not passed upon because the facts did not show that that question was involved

in the case. Pierson v. Hendrickson, 98 Mont. 244, 38 Pac. (2d) 991.

The only addition made by Chapter 275 to Chapter 47, Extraordinary Session 1933, was the statement by the legislature that "each high school district created under this chapter shall be a corporation separate from the common school districts included therein" and that the authority to issue bonds extends to "the full amount permitted by Section 6 of Article XIII of the State Constitution irrespective of the debt of the common school districts."

I think Chapter 275 is so palpably an attempt to fritter away section 6 of Article XIII of the Constitution that it cannot stand. To rely upon section 1301.1 et seq. is equally objectionable. The corporation brought into being under section 1301.1 or Chapter 275, Laws 1947, does not have authority to operate high schools. Its sole function is to borrow money for the purpose of "construction, repair, improvement and equipment purposes only."

It is true that in the Pierson case we held that compliance with Chapter 47 brought into being a corporation. I think such a corporation may not be invested with borrowing capacity to the limit authorized by section 6, Article XIII, in addition to and separate and apart from the indebtedness of the school district which operates the high school in question. If that can be done here then the legislature could authorize a redistribution and division of powers of an existing school district without limit by the simple device of authorizing the creation of separate corporations, each entrusted with a portion of the authority and each warranted in incurring a debt to the limit permitted by the Constitution without reference to the debt of the other. I think that cannot be done

Section 6 of Article XIII, it should be noted, is not a limitation upon the people to expend money. They may spend as much as they care to in maintaining public schools, but they may not, so long as section 6, Article XIII remains as it is, pass on to posterity an obligation in excess of the limit therein provided.

342

I do not attach importance to the circumstance that the boundaries of the two districts involved are not the same.

I think the judgment should be reversed.