[Sac. No. 1913.   Department Two.—December 26, 1912.]

## CARLTON H. WOOD, Respondent, v. COUNTY OF CALA-VERAS, LOUIS CADEMARTORI, as Tax-Collector of said County of Calaveras, and ADAM POE, as County Auditor of said County of Calaveras, Appellants.

SCHOOLS—UNION HIGH SCHOOL DISTRICT—PROPERTY WITHIN EXEMPT FROM TAXATION FOR COUNTY HIGH SCHOOL—CONSTITUTIONAL LAW.— The provisions of the Political Code as they existed prior to the amendments of 1909, (Pol. Code, secs. 1670, 1675), exempts the property in a union high school district from taxation for the support of a county high school. Such exemption is not in violation either of subdivision 20 of section 25 of article IV of the constitution, which prohibits local laws exempting property from taxation, or of section 11 of article I, which requires all laws of a general nature to have a uniform operation.

ID.—TERRITORIAL LIMIT OF COUNTY HIGH SCHOOL—SAME COUNTY MAY INCLUDE DIFFERENT KINDS OF HIGH SCHOOLS.—Because a district is called in such sections of the Political Code a "county high school district" furnishes no reason why it should not contain less than the territory of one county. The provisions of the sections, particularly subdivision 20 of section 1670, show that the legislature contemplated the existence of a county high school and other kinds, including union high schools, in the same county at the same time.

ID.—LEGISLATIVE CONTROL OVER FORMATION OF HIGH SCHOOLS.—The whole matter of the formation of high school districts is one of legislative control, and the legislature, in such sections, clearly provided for the formation of a union high school within a county where a county high school exists.

ID.—SPECIAL TAXES FOR SUPPORT OF SCHOOLS—LIMITATION ON PROPERTY LIABLE TO ASSESSMENT.—Taxes for the support of schools are in their nature special taxes, and the legislature has the power to limit their assessment to the property within the respective districts to be served.

ID.—ESTOPPEL—FORMER PAYMENT OF INVALID TAX.—The people within a union high school district are not estopped to deny the validity of a tax on the property therein situated assessed for the support of a county high school, merely because a similar tax had been formerly paid without protest.

ID.—DE FACTO HIGH SCHOOL DISTRICT—COLLATERAL ATTACK ON EXISTENCE.—The existence of a *de facto* high school district cannot be collaterally attacked.

Id.—Validation of Formation of Union High School District.—Subdivision 11 of the old section 1671 of the Political Code, and section 1724 of that code, adopted in 1909, had the effect of validating and making unquestionable the legal existence of a union high school district which had been operating as such for one year. Such curative acts are valid.

APPEAL from a judgment of the Superior Court of Calaveras County. A. I. McSorley, Judge.

The facts are stated in the opinion of the court.

J. P. Snyder, for Appellants.

Frank J. Solinsky, and Paul C. Morf, for Respondent.

MELVIN, J.—Plaintiff is a resident within Bret Harte Union High School district. His property, being wholly within said district, was assessed for the support of said union high school and likewise for the Calaveras County High School. Deeming the latter assessment improper he tendered to the tax-collector of the county the amount of his tax less the sum demanded for county high school purposes. The tender being refused he deposited the money so tendered in bank to the credit of the tax-collector and gave notice to that official, all in accordance with section 1500 of the Civil Code. He then brought this action to have the tax for the support of the county high school declared invalid and to compel the tax-collector to accept the money tendered. From a judgment granting his prayer this appeal is prosecuted.

Prior to the formation of the Bret Harte Union High School district, the Calaveras County High School District was formed, including territorially, the whole of the county of Calaveras. All of the property within the county was taxed for the support of that district. Appellants are of the opinion that, (1) the exemption of the property within the Bret Harte Union High School district would be a fraud upon the owners of the remaining property of the county, and an unconstitutional confiscation of their property; that, (2) the people of the Bret Harte High School district are estopped from questioning the legality of the tax for the county high

school; and that, (3) the union district was never legally formed.

It is conceded that the provisions of the Political Code in existence at the time of the formation of the Bret Harte Union High School district exempted the property in such a district from taxation for the support of a county high school, but such exemption is attacked by appellants as being in violation of subdivision 20 of section 25 of article IV of the constitution, which prohibits local laws exempting property from taxation, and section 11 of article I requiring all laws of a general nature to have a uniform operation. Prior to 1909 the law with reference to the establishment and maintenance of county high schools provided (sec. 1671 of the Pol. Code as it then stood) as follows: "There may be established in any county in this state one or more county high schools; provided, that at any general or special election held in said county after the passage of this act, a majority of all the votes cast at such election, upon the proposition to establish a high school, shall be in favor of establishing and maintaining such county high school or schools at the expense of said county." Appellants contend that this language involves the inclusion of the whole county within the county high school district—that the words "county high school" mean exactly what they import—a school for the use of the inhabitants of the county. It will be noted, however, from an examination of the section, that while the school is to be maintained at the expense of the county, the statute does not provide that all of the electors of the county shall or may participate in the election nor that it shall be held *throughout* the county. Former section 1670, by subdivision 20 thereof, provided:

"Nothing in this section shall be construed as preventing all of the school districts in any county from uniting to form one or more county high schools; provided, that when any city, incorporated town, school district, or union high school district shall vote to maintain a high school, such territory shall be exempt from taxation to support a county high school; and provided further, that when any city, incorporated town, school district, or union high school district shall establish a high school prior to the submission of the proposition to establish a county high school, the electors of such city, incorporated town, school district, or union high school

district shall be excluded from voting upon said proposition; provided further, that in counties where one or more city high schools, district high schools, or union district high schools, are maintained, the board of supervisors shall, upon the petition of two-thirds of the heads of families in a city high school district, district high school district, and in each school district composing the union high school district or districts, if there be more than one in the county, submit to all the qualified electors of the county the question of establishing and maintaining a county high school, and shall take such further steps as provided in section sixteen hundred and seventy-one of this act, relating to high schools. If the majority of all the votes cast on the proposition to establish a county high school are in the affirmative the board of supervisors shall, upon the establishment of the same, declare the high school or high schools existing in the county at the time of the election for a county high school, to be lapsed and the property of such lapsed high school or schools shall be held or sold by the board of supervisors for the benefit of the county high school."

By the fourth subdivision of former section 1671 the board of supervisors in providing for the special tax therein authorized was limited in making the levy to "all of the assessable property of the county, except as provided in subdivision twentieth of section one thousand six hundred and seventy of the Political Code." The above quoted provisions indicate that the legislature did not intend that a union high school district should be taxed for the support of its own school and for the maintenance of another school within the county. The two kinds of districts did not differ materially in the manner of formation. One was governed by the county board of education and the other by a district board, but there was and is no essential difference in the manner of their conduct and control. It has been held that a city school district is a corporation of a *quasi* municipal character and though its territorial limits may be actually coterminous with those of a city, its identity is not thereby lost nor merged in that of the city. (*Los Angeles School District* v. *Longden,* 148 Cal. 381, [83 Pac. 246] ; *Hancock* v. *Board of Education,* 140 Cal. 561, [74 Pac. 44].) So it may be said with equal force

that because a district is called a "county high school district," that fact furnishes no reason why it should not contain less than the territory of one county. It is evident from the provisions of the law as it stood at the time of the creation of the Bret Harte Union High School district, and particularly subdivision 20 of section 1670 of the Political Code above quoted, that the legislature contemplated the existence of a county high school and other kinds, including union high schools, in the same county at the same time. The contention is made that there should have been a dissolution of the county high school district prior to the formation of the union district and that a school district in the territory of an established high school district may not seek to enter another high school district until after its withdrawal from the district with which it was formerly connected. *Moorpark School Dist.* v. *Reynolds,* 13 Cal. App. 171, [109 Pac. 149], is cited in this behalf. The court in that case was considering the sufficiency of certain petitions filed by residents of school districts for the formation of a new union high school district and it was held that as one of these districts was already in a union high school district it could not come into a new union high school district. But there is no method provided by law for the formal withdrawal of a school district, as such, from a county high school district. Therefore, that case is not in point here. It has been held that territory may pass from a union high school district otherwise than by formal withdrawal,—namely, by operation of law when such territory is annexed to an incorporated city. (*Frankish* v. *Goodrich,* 157 Cal. 614, [108 Pac. 685].) The whole matter is one of legislative control and the legislature has clearly provided for the formation of a union high school district within a county where a county high school exists. In *Hughes* v. *Ewing,* 93 Cal. 417, [28 Pac. 1067], the court was considering the matter of a tax levy upon the property in a school district the limits of which had been changed between the time of an election by which a certain sum was voted for school purposes and the levy of the tax to raise said funds. It was held that property in the old but not included in the new district was not subject to the burden of a tax. In the course of the opinion the following language, which is applicable to the case at bar, was used: "The power

to change the boundaries of the district, as well as to define them in the first instance, is of legislative origin, and, whether exercised immediately by the legislature or mediately by a board of supervisors—the local legislature—is, whenever exercised, a legislative act.  It is well settled that the legislature has the power to make such changes, and that in the exercise of this power it may make such provision respecting the property and obligations of the corporation as it may deem equitable or proper, and that its action in this respect is conclusive.  It is also well settled that when the boundaries of such corporation are changed, either by forming a new corporation out of the territory of the original one or by transferring a portion of the territory to another corporation, in the absence of any provision on the subject, the old corporation will be entitled to all the property and be solely liable for all the obligations, and that the territory taken therefrom will not be entitled to any of the corporate property or liable for any of the obligations of the old corporation.''  Counsel for appellants earnestly protest that the power of school districts within a county to carve out new union high school districts being conceded, a situation might arise whereby the territory remaining might be too small and too poor to continue in operation the original county high school.  That, however, is a matter of legislative rather than judicial concern.

The principal argument of appellants against the constitutionality of the sections under review is based upon the statement that the county high school was and is kept open for the benefit of the inhabitants of the entire county, and that, therefore, the property in said county should be subject to taxation for its support.  It is true that prior to the amendments of 1909 the ninth subdivision of section sixteen hundred and seventy-one of the Political Code contained this language: ''All county high schools shall be open to the admission of graduates holding diplomas from the grammar schools of the county, and to all pupils of the county who can pass the examination for admission.  The examination for admission shall be conducted by the county board of education and the principal of the county high school.''  This, however, was merely a declaration of the scholastic requirements for admission to a county high school.  The matter of *attend-*

*ance* was regulated elsewhere, for subdivision 25 of section 1670 of the Political Code was as follows: "When, in consequence of distance or of convenience in traveling, it is more convenient for pupils residing in any high school district to attend the high school in another high school district, the high school board of the latter district may admit such pupils to the high school in their district upon such terms as the two boards may arrange." This provision has been practically retained in section 1751 of the Political Code adopted in 1909. We can find no reason, either in the former or the present statutes applicable to high schools, why the word "district," as used therein, did not apply to territory to be served by county high schools as well as by union high schools.

The taxes for the support of schools are in their nature special taxes and the legislature has the power to limit their assessment to the property within the respective districts to be served. (*Chico High School Board* v. *Board of Supervisors,* 118 Cal. 119, [50 Pac. 275]; *Brown* v. *Visalia,* 141 Cal. 380, [74 Pac. 1042].) In *People* v. *Lodi High School District,* 124 Cal. 700, [57 Pac. 662], this court said: "It is within the power of the legislature to constitute these schools and to provide for their support by methods different from those adopted for like purposes as to other schools." And again, in *Hughes* v. *Ewing,* 93 Cal. 417, [28 Pac. 1067] : "It would be difficult, upon principle, to uphold the validity of a tax upon property which is without the district to be benefited by the expenditure of the moneys so to be raised." We are satisfied that the statutes exempting property within union high school districts from taxation for the support of county high schools were constitutional and that the decision of the superior court based upon them was correct.

The people within the Bret Harte Union High School district were not estopped to deny the validity of the tax in question. No special facts constituting estoppel are pleaded and the general circumstance that the tax had been paid formerly without protest was not sufficient to prevent plaintiff from denying its validity. It was void and could not be cured by the application of the doctrine of estoppel. (*Raisch* v. *City and County of San Francisco,* 80 Cal. 6, [22 Pac. 22]; *Lukens* v. *Nye,* 156 Cal. 506, [20 Ann. Cas. 158, 36 L. R. A. (N. S.) 244, 105 Pac. 593].)

The final contention of appellants is that the Bret Harte Union High School district has no legal existence because of the failure of those seeking to create it to comply with all the requirements of the law.   There are two complete answers to this objection to the recognition of the district.   The first is that the existence of the union district as a *de facto* high school district cannot be attacked collaterally.   (*Hancock* v. *Board of Education*, 140 Cal. 560, [74 Pac. 44].)   The second answer is that the legislature has passed validating or curative acts making unquestionable the legal existence of districts which have been operating as such.   There is no question in the present case of the facts that in the Bret Harte district its trustees had erected school buildings and employed teachers and its inhabitants had paid taxes for the maintenance of the high school and that it had been conducted generally as a duly organized high school district.   There was evidence that the superintendent of schools had properly certified the result of the election by which the inhabitants of the school districts included within the Bret Harte district had voted to establish said union high school district.   Subdivision 11 of old section 1671 of the Political Code provided "the certificate of the county superintendent mentioned in subdivision four of section one thousand, six hundred and seventy of the Political Code when filed with the county clerk, when the result of the election as therein declared is in favor of the establishment of the high school, shall at the expiration of one year from the date of such filing be conclusive evidence that such high school district and high school has been legally established."   The language of section 1724 of the Political Code, adopted in 1909, contains a broader provision as follows: "All proceedings for the formation and organization of high school districts and the establishment of county, city, city and county, union, joint union and district high schools, had prior to the taking effect of this section, are hereby validated and declared legal, and said high school districts and high schools, and any other high school district which have been acting as such for more than one year previous to the taking effect of this section, are hereby declared to be legally formed, organized and established."   Such curative acts have been held valid.   (*People* v. *School Dist.*, 101 Cal. 661, [36 Pac. 119]; *Board of Education* v. *Hyatt*, 152 Cal. 519, [93

Pac. 117] ; *People* v. *Pacific Grove etc. Dist.*, 11 Cal. App. 213, [104 Pac. 586].)

For the reasons above set forth the judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.