E. G. ERICKSON, on behalf of himself and all other parties similarly situated.

*Plaintiffs and Appellants,*

vs.

SCHOOL DISTRICT NO. 2, in the County of Natrona and State of Wyoming; and NATRONA COUNTY HIGH SCHOOL, State of Wyoming,

*Defendants and Respondents.*

(No. 2472; May 2nd, 1950; 217 Pac. (2d) 887).

For plaintiffs and appellants the cause was submitted on the brief and oral argument of Mr. Edward E. Murane of Casper, Wyoming.

For the defendants and respondents the cause was submitted on the brief and oral argument of Mr. E. L. McCrary of Casper, Wyoming, and Mr. Miles P. Talmadge of Denver, Colorado.

## OPINION.

BLUME, Justice.

The facts in this case and the constitutional and statutory provisions applicable have been stated by the Chief Justice, and it is not necessary to do so again

except insofar as deemed necessary for a fair understanding of this opinion. Natrona County High School District embraces School District No. 2 of said county and some territory in addition thereto, the addition having about 11 per cent of the assessed valuation of the high school district, the remainder—the territory of School District No. 2—having about 89 per cent of the assessed valuation of the whole high school district. Section 5, Article 16 of our Constitution limits the debt of school districts to 2 per cent, with an additional 4 per cent for buildings, a total of 6 per cent. The question to be resolved herein is, as stated by the Chief Justice, whether District No. 2 in the County of Natrona and the Natrona County High School District each have their own separate 6 per cent limitation of bonded indebtedness, or whether the maximum of 6 per cent as a debt limit applies to both of them so that the debts of both districts when entered together may not exceed that figure. The contention of respondents, upheld by the trial court, is for the correctness of the first of these positions, that of the appellant is to the contrary.

For the purpose of this case we may at times for convenience refer to School District No. 2 of Natrona County and like districts as the ordinary school district in contra-distinction to a high school district. It is at least a doubtful question whether Section 5, Article 16 of our Constitution relating to the limitation of indebtedness in school districts permits each of the districts mentioned to have their own 6 per cent limitation, an affirmative answer apparently involving, as pointed out by counsel for appellant, the logical conclusion that if a high school district may be superimposed in whole or in part upon an ordinary school district with an independent debt limit of 6 per cent, so may a junior high school district, a kinder-

garten district, and in fact a district for every grade of school. See State ex rel. vs. Clausen, 66 Wash. 324, 119 P. 797, Ikard vs. Union Graded School Dist. No. 64 of Caddo Co. et al., 101 Okla. 80, 223 P. 141, Mistler vs. Eye, 107 Okla. 289, 231 P. 1045, 2 dissenting opinions in House vs. School District No. 4 of Park Co., 120 Mont. 319, 184 P. 2d 285. But it is not necessary to decide that point at the present time, since this case may be disposed of by considering our statutory provisions, and when that can be done, courts will not decide constitutional questions. 16 C. J. S. 207, etc. What we have said on the latter subject has been said solely for the purpose of aiding us in determining the probable meaning of the statutes hereafter considered. There must be statutory authority for the right of each of the districts to have a separate 6 per cent limitation hereinabove mentioned. Not only do we find no such statutory authority, but on the contrary it is, we think, specifically forbidden under our statutes, as will presently be shown. In order that the statutory provisions applicable may be more clearly understood, we must bear in mind that a school district as ordinarily understood includes a high school. It is said in 56 C. J. 168: "Properly speaking, the term 'public' or 'common' as applied to a school has no reference to the grade of the school or to what may or may not be taught therein, and includes graded and ungraded schools, elementary schools, grammar schools, and high schools. * * * The phrase 'common school education' has been said to be not easily defined nor to have any accepted definite meaning; but it has been held that education in subjects commonly taught in high schools is within the term as used in a constitutional provision for schools providing a common school education." In Annotation 113 A. L. R. 702 it is stated: "It is generally held, or conceded, that high schools are common or public schools within constitu-

tional and statutory provisions." Cases are cited from 16 different jurisdictions. We think that various sections of our Constitution, for example Sections 1, 6, and 9 of Article 7, support the general rule. In other words a high school is a component part of a school district.

The cases cited by the Chief Justice which deal with constitutional questions are not in point herein for the reason that the statutes applicable in those cases do not deal with the limitation of indebtedness contained in our own statutes. Thus in Montana, for instance, the statute provided that the high school districts could issue bonds "irrespective of the debt of the common school districts." Nor do we think that the cases are in point herein which hold that a municipality and a school district are separate entities enabling each to have indebtedness up to the limitation provided by the Constitution. There is no doubt on that point. The question here is whether the legislature intended that a school district can, for the purpose of creation of debt, be considered, practically speaking, as consisting of component parts, so as to give the school district and each part thereof authority to have indebtedness up to the constitutional limitation, namely, up to 6 per cent of the assessed valuation. Stated otherwise the question is whether a school district has more than one debt capability, which is similar to the question as to whether or not a municipality has more than one debt capability. In the latter case the question would be readily answered in the negative. We might incidentally mention the fact that only a "school" district, not a "high school" district is as such, permitted under Section 5, Article 16 of the Constitution to incur a debt of 4 per cent of the assessed valuation for the purposes of construction of buildings (authorized by a constitutional amendment in 1920),

and if a high school district does not come within the orbit of indebtedness of the constitutional "school district" but were considered an independent subdivision of the state for that purpose, it would, it seems, at most be enabled to incur an indebtedness not exceeding 2 per cent of its assessed valuation. However, as already stated, a school district as ordinarily understood includes a high school.

Section 67-916, Wyo. Comp. St. 1945 (both as it originally stood and as it was amended by Chapter 90, Session Laws 1947) which relates to a high school district provides as follows: "and provided further, that no bonds shall be issued by such district beyond the united bonding capability *of the territory* embraced within such district, taking into consideration existing obligations thereof at the time of the creation of such high school districts." What does bonding capability *of the territory* mean? There is no definition of that term in the statute and there can scarcely be any doubt that it refers to the 6 per cent limitation of indebtedness mentioned in Section 5, Article 16 of our Constitution. That constitutional provision insofar as pertinent here refers to school districts, not to any subdivision or component part thereof or adjunct thereto. And in the absence of a contrary showing—and there is none—it must be understood as heretofore shown, as including high schools. Hence, the legislature must be presumed to have had in mind, we think, that none of the territory embraced in a high school district could be bonded for more than a total of 6 per cent of the assessed valuation. That conclusion is strengthened by the provision that obligations should be considered which existed at the time of the creation of the high school district. That existing obligation could refer only to the obligation existing in what we have heretofore denominated as the

ordinary school district, and the indebtedness of that district and the indebtedness of the high school district are here linked together. If the high school district had an independent bonding capability of 6 per cent as contended by respondents herein, it is rather strange and was wholly futile and meaningless for the statute to refer to, and link the indebtedness of the high school district to an indebtedness of, any other district. It is true as pointed out by the Chief Justice that Section 67-916, supra, is no longer a part of the statutes of this state, in view of the fact that the amendment of 1947 provided that it should cease to be in force after June 1, 1949. Nevertheless, we think it clear that the statutory provision here discussed may still be taken into consideration in determining the meaning of the following section of the statute which we shall proceed to consider. 50 Am. Jur. "Statutes", Sec. 353.

Section 67-917, Wyo. Comp. St. 1945, is the main section which provides for issuing bonds of a high school district, after having been authorized by a vote of the people. That section contains this provision: "and provided, any such issue of bonds shall not increase the school indebtedness *of the territory* of said district beyond the maximum limit fixed by the State Constitution." That provision seems plain enough, but we may possibly make it still plainer. School indebtedness means nothing more than an indebtedness for schools. The maximum constitutional limitation as contained in Section 5, Article 16 of our Constitution is 6 per cent of the assessed valuation of the property in the district. Substituting these terms we have the statute reading substantially as follows: "Provided any such issue of bonds shall not increase the indebtedness for schools *in the territory* of said district beyond 6 per cent of the assessed valuation." The

term "increase" itself is important, for it refers to the then existing indebtedness in the territory covered by the high school district, whether that indebtedness was created by the high school district or by the ordinary school district, for it might well happen that only the latter would have an indebtedness. We are unable to see that the provision means anything else than that the property assessed for taxation in any territory within a school or a high school district in this state cannot be bonded for school purposes, including high school purposes, in excess of 6 per cent of the assessed valuation of the property therein.

That this construction of the statute is the only reasonable construction may be seen by considering another fact. The school districts embracing Cheyenne and Sheridan respectively, for example are not located in any high school district. They themselves teach the grades usually taught in high schools. They are limited in their indebtedness to 6 per cent of the assessed valuation. The same situation exists, and existed when the high school district law was passed in 1905 in most of the larger communities in the state. It is scarcely likely that in view of this fact the legislature intended, when it passed the high school district law, that a community by the simple expedient of causing a high school district to be organized should at once be able to double or nearly double the bonding capability of the territory, and in this respect obtain a radically differential status over the other large communities in the state. We think that the fundamental intention of the legislature in passing the high school district law was to lighten the burden of taxation of a school district by permittting various districts to join, and thus share, not add to, the burden which would otherwise exist. If the legislature had intended anything else than here indicated, it could easily have

provided that a bonded indebtedness of a high school district should not exceed 6 per cent of the assessed valuation of the district, or could have enacted a statute similar to that in Montana, but it did not do so. It follows, of course, that the governing authorities of a high school district which covers or overlaps an ordinary school district, and the governing authorities of the latter must cooperate in connection with the bonded indebtedness of the territory for school purposes so that the allowable ilmitation of 6 per cent of the assessed valuation in the aggregate may not be exceeded.

The foregoing construction seems to leave the situation in this case about as follows: The assessed valuation of the high school district is, as shown by the record, the sum of $49,953,604. The assessed valuation of the territory embraced in School District No. 2 is $44,423,049 which is a little less than 89 per cent of the former, leaving a little more than 11 per cent for the territory of the high school district which lies outside of the territory embraced in School District No. 2. The indebtedness heretofore incurred by the high school district should be apportioned accordingly. That district has already incurred an indebtedness of $1,000,000 by issuing bonds in that amount. Apportioning that as above mentioned makes a bonded indebtedness for school purposes upon the territory embraced in School District No. 2 of approximately $890,000. School District No. 2 has incurred an indebtedness of $1,000,000 by issuing bonds in that amount, making the total indebtedness for school purposes resting upon the territory embraced in School District No. 2, the sum of approximately $1,890,000. The capability of incurring indebtedness for school purposes of the territory of that district — 6% of $44,423,049 — is $2,665,382 leaving approximately

$775,382 which may be still incurred as an indebtedness for school purposes by either of the districts or by both in combination, assuming that the situation still is as shown by the record. The exact amount can be determined by the trial court.

It has been suggested in the brief of counsel for respondents that the construction here placed upon our statutory provisions would be violative of Section 34, Article 1 of our Constitution which provides that all laws of a general nature shall be uniform in operation. The limitation mentioned in this statute applies to all high school districts alike and it is difficult to see how uniformity could be bettter attained than by such a provision.

The judgment of the District Court is accordingly reversed with direction to enter a judgment in conformity with this opinion, and for any additional order that may be deemed proper.

KIMBALL, J., concurs.

RINER, C. J., dissents.

## DISSENTING OPINION

RINER, Chief Justice, dissenting.

Final judgment which it is desired this court should review under these direct appeal proceedings, was entered by the District Court of Natrona County January 31, 1950. One E. G. Ericksen, on his own behalf and all other parties similarly situated, as plaintiffs, brought an action in the District Court above named against School District No. 2 in the County of Natrona and State of Wyoming and Natrona County High School, State of Wyoming, as public corporations of this state and named defendants. For brevity the

228

two parties last mentioned will usually be designated as "District No. 2" and as "High School."

Plaintiffs' petition is substantially as follows: After stating in Paragraph 1 that he is a qualified, tax-paying elector, resident in District No. 2 and also in the High School and that he acts on his own behalf and that of others as above stated, alleges in Paragraph 2 that District No. 2 and the High school are public school districts organized under Wyoming law and that the High School includes within its boundaries all of District No. 2 and also School Districts Nos. 3, 4, 9, 11 and 16 in Natrona County, Wyoming.

Paragraph No. 3 states that on May 24, 1949 the board of school trustees of said District No. 2 submitted to the qualified electors thereof the question of authorizing the issuance of negotiable coupon bonds of said district in the amount of two million dollars or in a lesser amount to the extent of the lawful debt limit of said district for the purpose of erecting school buildings therein; that at said election a majority of qualified electors voting in ballot boxes "A" and "B" respectively, voted in favor of the issuance of such bonds; in box "A" 432 voted "Yes" and 55 "No", and in box "B" 1857 voted "Yes" and 623 "No".

Paragraph No. 4 states that the same day the Board of School Trustees of the High School also submitted a similar question in a similar amount and for a similar amount and for a similar purpose relative to said districe to the qualified electors thereof; at this election more than a majority of said electors voted in favor of the issuance of such bonds; in ballot box "A" 423 voted "Yes" and 67 voted "No," and in box "B" 1816 voted "Yes" and 751 "No".

Paragraph No. 5 avers that each of said Boards threatens to issue the full amount of the two million dollars of bonds thus authorized and unless prevented by the court will issue all of the bonds voted in each district above named; that these bonds would pass into the hands of bona fide purchasers for value and said districts would be estopped to raise a question either as to the validity of said bond issues or the debt capacity of either district.

Paragraph No. 6 asserts that the last equalized assessed valuation of the taxable property in District No. 2, valuation for 1949, is $44,423,049.00; that other than the bonds thus proposed to be issued, said district has no outstanding bonded indebtedness.

Paragraph No. 7 after stating the last equalized assessed valuation of the taxable property within said High School being the 1949 valuation, is $49,953,604.00, alleges that other than the bonds thus proposed to be issued, neither the High School nor any of the school districts included therein has any other outstanding bonded indebtedness.

In Paragraph 8 it is pleaded that under the provisions of Section 5, Article XVI of the Wyoming Constitution and Sections 67-401 and 67-402 W. C. S. 1945 the maximum amount of indebtedness which a school district may lawfully incur is six per centum of the assessed valuation of the taxable property in such district; that under the provisions of Section 67-916 W. C. S. 1945 no bonds shall be issued by a high school district in Wyoming "beyond the united bonding capability of the territory embraced within such district, taking into consideration existing obligations thereof at the time of the creation of such high school district"; that under the provisions of Section 67-917

W. C. S. 1945, the board of trustees of a high school district may lawfully issue bonds provided that such issue "shall not increase the school indebtedness of the territory of said district beyond the maximum limit fixed by the state constitution".

Paragraph 9 asserts that if District No. 2 should issue the full two million dollars of bonds authorized and if said High School should also issue the two million dollars of its authorized bonds, the total would substantially exceed the united bonding capability of the territory embraced within such districts and substantially increase the school indebtedness of the territory of said districts beyond the maximum limit fixed by the state constitution, and that owners of property within said districts would be taxed for the payment of said bonds and the interest thereon in an amount prohibited by the constitution and laws of Wyoming to the irreparable damage to the plaintiff and others so situated.

The 10th and last paragraph states that plaintiff has no "plain, adequate or speedy remedy at law".

An order and decree of the court is sought determining the amount of bonds which each of said districts may lawfully issue and enjoining permanently the issuance of any bonds by either of said districts beyond its respective debt limit and for such further relief as he should have.

This petition was met by a joint and several answer on the part of the defendants. In its first paragraph it admits all of the allegations in plaintiffs' pleading in paragraphs 1 to 7 inclusive. As to Paragraph 8 of the petition it admits the legal existence of Section 5, Article XVI of the Wyoming Constitution and also

Section 67-401 and 67-402 W. C. S. 1945 and that under their provisions the maximum amount of indebtedness which a school district may lawfully incur is six per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment. The legal existence of Section 67-916 W. C. S. 1945 as amended by Chapter 90, Laws of Wyoming, 1947 and legal existence of Section 67-917 W. C. S. 1945 is admitted. Paragraph 3 of defendants' answer denies all allegations in paragraphs 9 and 10 of plaintiffs' petition.

Answering plaintiffs' petition further, defendants allege in Paragraph 4 that under the provisions of Sections 67-605 and 67-902 W. C. S. 1945, District No. 2 and the High School are separate and distinct bodies corporate; that at the time the board of trustees of District No. 2 submitted to the qualified electors of said district the bond question as alleged in Paragraph No. 3 of plaintiffs' petition the six per centum maximum constitutional limit of indebtedness which said district could incur was $2,665,382; that at the time the board of trustees of said High School submitted to the qualified electors of said district the bond question as alleged in Paragraph 4 of plaintiffs' pleading, the six per centum maximum constitutional limit of indebtedness which said district could incur in its own right separate and apart from the indebtedness of said District No. 2 was $2,997,216; that on August 1, 1949 said District No. 2 acting through its board of trustees legally issued one million dollars of the bonds of said district as authorized by a vote of the district's electors; that on the date last mentioned the High School through its board of trustees regularly issued one million dollars of the district bonds as authorized by a vote of the district's electors; that the two million dollars of bonds authorized by the vote of District No. 2's qualified

electors and the separately authorized two million dollar bonds of the High School are the separate and distinct obligations and indebtedness of the particular district which issued the bonds pursuant to the vote of the electors of each separate district.

In defendants' answer Paragraph 5 it is charged that Section 67-916 W. C. S. 1945 as amended by Chapter 90 Laws of Wyoming, 1947 is unconstitutional in providing:

" . . . provided, that said trustees may, if in their judgment they think best, bond said district for the purpose of raising money necessary to build, equip a high school in said district, and to purchase a suitable site therefor; . . . "

because it violates Section 4 of Article XVI of Wyoming's Constitution which provides:

"No debt in excess of the taxes for the current year shall, in any manner, be created by any county or subdivision thereof, or any city, town or village, or any sub-division thereof in the State of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved;"

that Section 67-916 last mentioned is also unconstitutional in providing that:

" . . . and provided further, that no bonds shall be issued by such district beyond the united bonding capability of the territory embraced within such district, taking into consideration existing obligations thereof at the time of the creation of such high school district . . . "

because it violates Section 34 of Article I of Wyoming's Constitution which provides that: "All laws of a general nature shall have a uniform operation"; that Section 67-916 aforesaid is also unconstitutional in providing:

" . . . and provide further, that no bonds shall be issued by such district beyond the united bonding capability of the territory embraced within such district, taking into consideration existing obligations thereof at the time of the creation of such high school district. . . "

because it violates Section 5 of Article XVI of Wyoming's constitutional provision which provides that:

"No city, town or village, or any sub-division thereof, or any sub-division of any county in the State of Wyoming, shall, in any manner, create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein; . . . and provided further, that any school district may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of the erection or enlargement of school buildings therein; . . . "

It is prayed that the court decree the lawful debt limit of each of the defendants and that the bond issues of two million dollars authorized for District No. 2 as above alleged and the separate bond issue in the same amount for the High School as above alleged is each "within the legal debt limit as fixed by the constitution and statutes of the State of Wyoming".

A reply to this answer was filed by the plaintiffs denying all new matter alleged in defendant's pleading.

It was stipulated by the parties through their respective counsel that the action should be "tried upon an agreed statement of facts filed" on January 16, 1950. This agreed statement is in substance as to its paragraphs numbered 1 to 4 inclusive as follows: It concedes as true the allegations of plaintiffs' petition in paragraphs Nos. 1 to 4 inclusive as above set forth. It will serve no useful purpose to here repeat them.

The remaining portion of the agreed statement of facts embracing paragraphs 5 to 9 inclusive thereof is verbatim as follows:

"The last equalized assessed valuation of the taxable property within the boundaries of School District No. 2, in the County of Natrona, and State of Wyoming, is $44,423,049.00, and 6 per cent thereof is $2,665,-382.00.

"The last equalized assessed valuation of the taxable property within the boundaries of Natrona County High School, State of Wyoming, is $49,953,604.00 and 6 per cent thereof is $2,997,216.00.

"On May 24, 1949 when School District No. 2, in the County of Natrona, and State of Wyoming submitted the above agreed bond question to the qualified electors of said district it did not have any outstanding bonded indebtedness. On August 1, 1949 the Board of Trustees of said district duly and regularly issued and sold $1,000,000.00 of the bonds of said district as authorized by the electors thereof on May 24, 1949.

"On May 24, 1949 when Natrona County High School, State of Wyoming submitted the above agreed bond question to the qualified electors of said district it did not have any outstanding bonded indebtedness. School Districts No. 3, 4, 9, 11 and 16, in the County of Natrona, and State of Wyoming do not have any outstanding bonded indebtedness. On August 1, 1949 the Board of Trustees of said high school district duly and regularly issued and sold $1,000,000.00 of the bonds of said district as authorized by the electors thereof on May 24, 1949.

"The Board of Trustees of School District No. 2, in the County of Natrona, and State of Wyoming threatens to issue and sell another $1,000,000.00 of the bonds of said district as authorized by the electors of said district, and the Board of Trustees of Natrona County High School, State of Wyoming threatens to issue and sell another $1,000,000.00 of the bonds of said district as authorized by the electors thereof."

No evidence was taken when the cause was heard by the court and the legal questions herein arise upon the pleadings, the agreed statement of facts and certain provisions of the constitution of Wyoming and the statutory law of the state.

The judgment before us for review after finding that on May 24, 1949 the board of trustees of District No. 2 and the board of trustees of the High School each duly and regularly and separately submitted to the qualified voters of their respective districts the question of authorizing issuance of negotiable coupon bonds of each of these two districts in the "amount of $2,000,000.00 or in a lesser amount to the extent of the lawful debt limit" of each of said districts and that these questions in each of said districts were determined favorably to such issues by the electors in said separate districts, also found in paragraphs numbered 2 to 4 inclusive that:

"The 1949 or last equalized assessed valuations of the taxable property within the boundaries of School District No. 2, in the County of Natrona, and State of Wyoming, is $44,423,049.00; the 1949 or last equalized assessed valuation of the taxable property within the boundaries of Natrona County High School, State of Wyoming, is $49,953,604.00.

"School District No. 2, in the County of Natrona, and the State of Wyoming, and Natrona County High School, State of Wyoming, are separate and distinct corporate entities and School District No. 2, in the County of Natrona, and State of Wyoming is not required to take into consideration the outstanding bonded indebtedness of Natrona County High School, State of Wyoming, in arriving at the constitutional and statutory limits of indebtedness which said School District No. 2 may incur; further, Natrona County High School, State of Wyoming, is not required to take into consideration the outstanding bonded indebtedness of School District No. 2, in the County of Natrona, and

State of Wyoming in arriving at the constitutional and statutory limit of indebtedness which said High School District may incur.

"Based upon the 1949 or last equalized assessed valuation of the taxable property within the boundaries of School District No. 2, in the County of Natrona, and State of Wyoming, the constitutional and statutory legal limit of indebtedness which said District may incur, pursuant to the vote of the qualified electors of said District is $2,665,382.00. Based upon the 1949 or last equalized assessed valuation of taxable property within the boundaries of Natrona County High School, State of Wyoming, the constitutional and statutory limit of indebtedness which said District may incur, pursuant to vote of the qualified electors of said District, is $2,997,216.00."

It was accordingly adjudged that plaintiffs' prayer for an injunction should be denied and that the two million dollars in negotiable coupon bonds of District No. 2 duly authorized therein and the same amount of such bonds duly authorized therein for the High School were each within the constitutional and statutory limits of indebtedness which each of said districts might lawfully incur.

Those portions of the Constitution of Wyoming involved here are: Section 23 of Article I which briefly states:

"The right of the citizens to opportunities for education should have practical recognition. The legislature shall suitably encourage means and agencies calculated to advance the science and liberal arts."
Section 34 of Article I which reads:

"All laws of a general nature shall have a uniform operation." Section 1 of Article VII which reads:
"The legislature shall provide for the establishment and maintenance of a complete and uniform system of public instruction, embracing free elementary schools

of every needed kind and grade, a university with such technical and professional departments as the public good may require and the means of the state allow, and such other institutions as may be necessary."
Section 4 of Article XVI thus worded:

"No debt in excess of the taxes for the current year shall, in any manner, be created by any county or sub-division thereof, or any city, town or village, or any sub-division thereof in the State of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved."

Section 5 of the Article last mentioned whose language is:

"No city, town or village, or any sub-division thereof, or any sub-division of any county of the State of Wyoming, shall, in any manner, create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein; . . . and provided further, that any school district may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of the erection or enlargement of school building therein; . . . "

The statutory provisions to be kept in mind in disposing of this case appear in language as follows: Section 67-605, W. C. S. 1945:

"Each school district formed under the provisions of this Act (§§ 67-601—67-643) is hereby declared to be a body corporate by the name and style of 'School District No. ——, in the County of ——, and State of Wyoming;' and in that name it may hold property, and be a party to suits and contracts."

Section 67-401, W. C. S. 1945:

"The board of school trustees of any school district may, whenever a majority thereof so decide, submit to the electors of the district the question whether the

board shall be authorized to issue the coupon bonds of the district to a certain amount, not to exceed two (2) per cent of the taxable property in said district, and bearing a certain rate of interest, not exceeding six (6) per cent per annum, and payable and redeemable at a certain time, not exceeding twenty-five (25) years, for the purpose of building one or more school houses in said district, and providing the same with necessary furniture, and funding outstanding indebtedness evidenced by warrant or otherwise, against said district."

Section 67-402, W. C. S. 1945:

"The board of school trustees of any school district may whenever a majority thereof so decide, submit to the electors of the district the question whether the board shall be authorized to issue the coupon bonds of the district to a certain amount, not to exceed four (4) per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, and bearing a certain rate of interest, not exceeding six (6) per centum per annum for the purpose of the erection or enlargement of school buildings therein, which said indebtedness may be incurred and said bonds issued in addition to those provided for in Section 2365, Wyoming Compiled Statutes of 1920 (§ 67-401)."

Section 67-901, W. C. S. 1945:

"For the purpose of affording better educational facilities for pupils more advanced than the studies provided in the district schools existing in the several counties in this State, and in addition to such school districts as are now organized, or which may hereafter be formed under the laws for the creation and formation of the same, there may be organized and established a high school district and a free high school therein, on conditions and in the manner hereinafter prescribed, the territorial extent of which may embrace any number of present organized and constituted school districts, the qualified electors of which may

vote to become a part of such high school district and participate in the maintenance and benefits of such high school organization."

Section 67-902, W. C. S. 1945:

"Each high school district which may be formed under the provisions of this Act (§§ 67-901—67-931), is hereby declared to be a body corporate by the name and style of '——— High School, State of Wyoming,' and in that name it may hold property and be a party to suits and contracts."

Section 67-915, W. C. S. 1945:

" . . . The trustees shall have authority to make all necessary rules for the government of said high school not inconsistent with law, and shall possess all powers which may be delegated to the Board of Trustees in other school districts, at the annual meetings thereof. Such high school district shall be recognized as one of the regular constituted school districts of the county, and shall be entitled to and shall receive all the rights and benefits as such."

Section 67-916, W. C. S. 1945 as amended by C. 90, Sec. 1, Laws of Wyoming 1947:

"At the first meeting of the Board of Trustees after any election in each year, or at any appropriate time, the said trustees shall make an estimate of the amount of funds needed for building purposes, for the payment of teachers' wages and for the payment of contingent expenses, and they shall present to the Board of County Commissioners a certified estimate of the tax required to raise the amount desired for such purpose but in no case shall the tax for such purpose exceed in any one year the amount of twelve (12) mills on the dollar on all taxable property in said district, and when the tax is levied for the payment of teachers' wages and contingent expenses only, it shall not exceed seven (7) mills on the dollar; provided, that said trustees may, if in their judgment they think best, bond said district for the purpose of raising money neces-

sary to build, equip a high school in said district, and to purchase a suitable site therefor. But no bonds shall ever be issued to pay teachers' salaries, or for the general expenses in maintaining said school; and provided further, that no bonds shall be issued by such district beyond the united bonding capability of the territory embraced within such district, taking into consideration existing obligations thereof at the time of the creation of such high school district nor shall the issuance of any such bonds impair any outstanding obligations of any portion of the territory embraced within such high school district."

In connection with the section last above set forth it may be noted at this point that the amended statute of 1947 increased the maximum tax rate from ten mills to twelve mills on the dollar and also increased the maximum tax rate for all purposes exclusive of building purposes from five mills to seven mills on the dollar.

Section 2 of C. 90, Laws of Wyoming 1947 aforesaid reads:

"This Act shall take effect and be in force from and after its passage and approval, *and shall expire on June* 1, 1949." (Italics supplied.)

Section 67-917, W. C. S. 1945:

"Election to vote on issue of bonds— . . . The Board of Trustees of the High School District, whenever a majority of the Board shall so desire, may submit to the electors of said district the question whether the board shall issue bonds of said district for the purchase, erection or completion of a building for high school purposes and the equipment and for a suitable site therefor, or to refund an existing indebtedness incurred for the purchase, erection or completion of such a building, provided, such bonds must run for a term of twenty-five (25) years or less, but no longer; and provided, any such issue of bonds shall not increase the school indebtedness of the territory of said district beyond the maximum limit fixed by the State Constitution. . . . "

In Section 67-306, W. C. S. 1945 the distinction between high school districts and common school districts is indicated, but I do not deem it necessary to set forth here its provisions.

The appellants contend, as I understand it, that no one piece of property can be subjected to bonded indebtedness in excess of a six per cent limit of the valuation of the property and the other property in a particular district. On the other hand respondents insist that the qualified electors of each school district may authorize the issuance of bonds to the full six per cent debt limit of that particular district separate, apart and distinct from the outstanding indebtedness of any other school district.

Compressed into brief compass the question to be resolved herein is whether District No. 2 and the High School each have their own separate six per cent limits of bonded indebtedness or whether the maximum of six per cent as a debt limit applies to both of them so that the debts of both districts when added together may not exceed that figure.

We have seen from the quotations given above from the Wyoming Constitution (Section 23 of Article I; Section 1 of Article VII) that the people of this state were deeply interested in establishing an educated citizenry. That fortunately is as true now as it was when the state entered the federal union. In connection with the case at bar it is especially worthy of note that not only the common school districts (Section 67-605 supra) but the high school districts (Section 67-902 supra; Section 67- 915 supra) also are declared to be bodies corporate. The high school districts are stated to be (Section 67-901 supra) "in addition to such school districts as are now organized". The

section of the statute last mentioned also provides that high school districts may have a territorial extent "Which may embrace any number of presently organized and constituted school districts" when the qualified electors of such school districts vote to become a part of the high school district.

So I find the trustees of a high school possess (Section 67-915 supra) "all powers which may be delegated to the board of trustees in other school districts at the annual meetings thereof"; and that a high school district "shall be recognized as one of the regular constituted school districts of the county and shall receive all the rights and benefits as such".

In order to provide the necessary funds for high schools and their proper functioning the statute (Section 67-916 supra) provided that tax levies not exceeding twelve mills on the dollar might be used for supplying money for building purposes, teachers' wages and contingent expenses, these levies to be limited to seven mills on the dollar when sought to be employed for only teachers' wages and contingent expenses. It may especially be noted that the section last above referred to declares that the "trustees *may, if in their judgment they think best,* bond the districts for building and equipping a high school and purchasing a site therefor." (Italics supplied).

In other words the section would seem to have empowered the trustees, if they so decided, to impose a bonded indebtedness upon the high school district without seeking authority for so doing by first invoking the action of the duly qualified voters of the district. At least its literal language would appear to so indicate.

The restraints laid upon the action of the trustees if they undertook to pursue this method of bonding the district were: (1) such bonds could not be issued to pay the salaries of teachers or for general school maintenance expenses; (2) such bonds should not be issued "beyond the united bond capability of the territory embraced within such district, taking into consideration existing obligations thereof at the time of the creation of such high school district"; (3) "the issuance of such bonds should not impair any outstanding obligations of any portion of the territory embraced within such high school district."

It will be recalled with reference to the restraints just particularized that according to the agreed statement of facts (Paragraphs 7 and 8 supra) at the time when the bond questions as hereinbefore described were submitted to the electorates of District No. 2 and the High School, neither of these districts nor Districts Nos. 3, 4, 9, 11 and 16 had any outstanding bonded indebtedness whatsoever which would be effected by the voted issues. It is perfectly evident also, as it seems to me, that the bonded debts of District No. 2 and the High School were not incurred under said Section 67-916 at all, but under Section 67-917 supra only, and accordingly we should not now be concerned with the operation of that section. It is not asserted that these various districts had any other indebtedness that would be affected by the voted issues now presented by this record.

Additionally it should not be overlooked, as noted above, that since June 1, 1949, just a week after the two elections which voted the two bond issues involved, and before they became obligations of the several districts affected, Section 67-916 as changed by the amendatory Act (Laws of Wyoming, 1947, C. 90)

ceased to exist as a part of the statutory law of this state, the legislature specifically stating in Section 2 thereof that the Act should "expire on June 1, 1949". I can see no good reason for endeavoring to harmonize that statute as thus altered with Section 67-917 supra when by its own terms it does not now exist as a state law.

It is most important to bear in mind that each of these school districts as well as the High School is established as a separate political body. Under the authorities hereinafter reviewed, each district had in itself power to impose indebtedness not exceeding six per cent of the equalized assessed valuation of the taxable property therein. Section 67-917 does not seem to clearly forbid such a conclusion and no other applicable statute has been called to my attention that does.

The section last mentioned came into the body of our law through the enactment thereof as Section 16 of C. 67, Laws of Wyoming, 1905. This Act of 1905 limited the bonded debt for the purposes therein named to $50,000. This statute was thereafter amended by Laws of Wyoming, 1921, C. 137, Section 1 and that limitation was dropped at that time. The only restraint imposed and left in the section as thus amended was the one that now prevails therein. It directs, as quoted above, that any bonds issued under the section should "not increase the school indebtedness of the territory of said district beyond the maximum limit fixed by the State Constitution." It seems to me that the clause last quoted means simply that the High School District indebtedness shall not be increased "beyond the maximum limit fixed by the State Constitution", i.e., six per cent. If any other meaning is given, the consequences of so doing will be, to

say the least, very strange. The only legal restraint imposed upon common school districts is that their indebtedness shall not exceed six per cent of the last equalized assessed valuation. If a common school district should decide to incur indebtedness to its maximum six per cent limit—which it has a right to do—a high school district containing such common school district would not be able to incur any bonded debt at all. Other strange consequences could readily be suggested. It is not believed that the legislature intended any such unfortunate results to flow from its establishment of high school districts, especially in view of Section 34, Article I of our State Constitution quoted above, its uniformity of laws section.

As we have seen the last equalized assessed valuation of District No. 2 was $44,423,049.00 and six per cent would, of course, be $2,665,382.00 while the last equalized assessed valuation of the taxable property within the High School was $49,953,604.00, six per cent thereof being $2,997,216.00.

Appellant concedes that if the two corporate entities (district No. 2 and the High School District) have separate limits of bonded indebtedness, one six per cent limit for each, then the two issues of bonds voted as described above are proper. But if the property in District No. 2 as a part of the High School District cannot be charged with more than six per cent in bonds, then the High School, which includes not only District No. 2 but also 3, 4, 9, 11 and 16 can not sell its entire voted bond issue for there would be an excess of bonded debt over the statutory permissible amount if both bond issues were sold.

An examination of the authorities to which our attention has been directed, as well as others which

my investigation has brought to light, discloses that, as stated in the case note (p. 819) appended to 94 A. L. R. 813, Board of Education vs. Upham, 357 Ill. 263, 191 N. E. 876:

"The general rule is that, in applying constitutional or statutory debt-limit provisions to separate and distinct political units with identical boundaries, exercising different functions, only the indebtedness of the political unit in question can be considered, and the debts of the other independent political units should be excluded."

Decisions from some ten state jurisdictions are cited. The same rule would seem to prevail even when the boundaries of separate and independent political districts overlap for, (p. 824) says the author of the note just referred to:

"In most of the cases involving the question the same rule has been applied in the case of overlapping boundaries as in the case of identical boundaries, so that, in determining the debt limit of a political unit as prescribed in the constitutional or statutory provision applicable thereto, the indebtedness of another separate and independent political unit which embraces part of, or more than, the territory of the former unit, is not to be taken into consideration."
Cases from eight state appellate courts are given as supporting this rule. Gray, Lim. Taxing Power and Pub. Indebtedness, § 2148.

In accord with what is said in the note aforesaid it is similarly declared in 56 C. J. 583, 584 that:
"In computing the existing bonded indebtedness of a school district or other local school organization for the purpose of determining whether it equals or exceeds the limit prescribed by law so as to preclude another issue of bonds, it is only the bonded indebtedness of the particular organization that is considered and not that of another distinct and separate municipality or other political body whose territory is coex-

tensive in whole or in part with that of the school district desiring to issue bonds."

A later case from one of the state jurisdictions upholding the rule given in the excerpt in 94 A. L. R. supra when the boundaries of the political subdivisions are co-terminous is Baldwin vs. Board of Education, —N. D. —, 33 N. W. 2d 473. There the state constitution provided:

"The debt of any county, township, city, town, school district or any other political subdivision, shall never exceed five (5) per centum upon the assessed value of the taxable property therein; . . . "

In applying this constitutional debt limit to two separate and distinct units (a city and a school district) yet each having identical boundaries but each exercising functions and each having power to incur bonded indebtedness, it was in this case held that only indebtedness of the political unit in question could be considered and the debt of the other independent unit should be excluded. The opinion in the case concluded as follows:

"The city of Fargo and the defendant, the Board of Education of the City of Fargo, comprise the same area and the same population, but they are corporate bodies, independent of each other, each performing different functions, discharging different duties, and exercising different powers. The defendant, the Board of Education of the City of Fargo, administers the public schools, provides and controls all properties utilized in the operation, and levies the taxes for the maintenance, of such schools. The city of Fargo has nothing to do with these activities and can exercise no control over them. Each of these municipalities has its bonding powers as prescribed by law and each has its own debt limit under the Constitution. In determining the indebtedness of the city of Fargo its indebtedness alone is the basis to which the constitutional limit must be applied and in determining the

indebtedness of the defendant, Board of Education of the City of Fargo, and its power to incur indebtedness and issue bonds, the indebtedness incurred by the defendant, the Board of Education, alone is the amount of indebtedness to be computed. Each of these municipalities is authorized to incur indebtedness up to the limit prescribed by section 183 of the Constitution and its power to incur such indebtedness is not affected by the indebtedness of the other municipality whose boundaries are coterminous. Vallelly and Brockhoff v. Board of Park Commissioners, supra; Board of Education of City of Chicago v. Upham, supra; Hyde v. Ewert, 16 S. D. 133, 91 N. W. 474; Lippert v. School District No. 4, 187 Wis. 154, 203 N. W. 940; Russell v. Middletown City School District, supra. See also, Wood v. County of Calaveras, 164 Cal. 398, 129 P. 283, 285.

"We hold that the defendant, the Board of Education of the City of Fargo, is a body corporate; that it has its own limit of indebtedness under the constitution which is not affected by the indebtedness of the City of Fargo and that the proposed bond issue will not create an indebtedness in excess of section 183 of the Constitution."

See also Board of Education vs. National Life Insurance Company, 94 Fed. 324, 325, 326; Kelly vs. Brunswick School District, 134 Me. 414, 187 Atl. 703; Board of Education of City of Chicago vs. Upham, 357 Ill. 263, 191 N. E. 876 supra.

Coming more closely in facts to the case at bar are the following decisions: In Fiedler vs. Eckfeldt, 335 Ill. 11, 166 N. E. 504 it was decided that a high school district is a district separate from any other school districts whose territory is included in whole or in part within the high school district; that a high school district whose boundaries are not co-terminous with such a district may issue bonds up to its debt limit without regard to the indebtedness of the school districts in-

cluded in its boundaries and that the bonds will be obligations of the high school district only and not of any of the school districts.

Section 8 of Article IX of the Arizona Constitution in part prescribes that:

"under no circumstances shall any county or school district become indebted to an amount exceeding ten per centum of such taxable property, as shown by the last assessment roll thereof; . . . "

The electors of Washington School District No. 6 in Maricopa County Arizona voted to bond the district in the sum of $164,000.00. The operation of separate debt limits as between a common school district and a high school district is discussed in Morgan vs. Board of Supervisors, 67 Arizona 133, 192 P. 2d 236 in this language:

"Appellant contends (though he offered no proof in support) that the appellee school district lies within the Glendale Union High School District, and that if its proportionate part (two-fifths) of the High School District bonded indebtedness were added to appellee school district's indebtedness it would far exceed the ten per cent limit; in fact, he argues that it would be possible by computing the indebtedness in this manner to saddle onto an area twenty percent indebtedness rather than the limit fixed by the Constitution. Even admitting the facts relied upon by appellant to be true, there is no merit to this contention *because the grade school and the high school are distinct political units and the constitutional limitation is held to apply separately to elementary school and high school districts even though they are wholly or partly coincident in territory.*" (Italics supplied.)

171 A. L. R., 734, Note, says that the courts in a number of cases "in view of statutes establishing school districts or units as corporate bodies with separate powers and liabilities have held that such a school unit

is to be considered as a separate and distinct political or governmental unit for the purpose of determining the constitutional debt limit of the school unit or the civil governing unit the boundaries of which are co-terminous or overlapping with that of the school unit." Many authorities are cited in support of this view from some twelve appellate jurisdictions.

The case of House vs. School District No. 4 of Park County, 120 Mont. 319, 184 Pac. 2d 285 had occasion to consider Section 6 of Article XIII of the Montana Constitution reading:

"No . . . school district shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding three (3) per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such . . . school district shall be void."

The sole question in the case, says the court, was "whether the indebtedness of the high school district must be considered in computing the debt limit of the school district". The facts there were, briefly, that school district No. 4 was within Park County High School District and the valuation of the property in District No. 4 was fifty-nine per cent of the High School district valuation. The High School District had an outstanding bonded debt of $99,000.00. The electors of District No. 4 had voted to issue $325,000.00 of bonds. The issuance of such bonds would have exceeded the three per cent debt limit of the constitution, supra, if there were not separate limits for each of these districts. The Montana statutes prescribed that each district could issue bonds but not to exceed the three per cent aforesaid. The law of Montana applicable to

the high school districts authorizes such districts to issue bonds (Section 1224.1 Rev. Statutes) "to the full amount permitted by Section 6 of Article XIII of the state constitution irrespective of the debt of the common school districts." This, as it seems to me, is but placing in statutory form the general rule stated in the note to 94 A. L. R. 813, supra.

Disposing of the case and affirming the judgment under review, after examining many authorities, these conclusions were announced:

"There is, however, no question but that the majority opinion under constitutional provision either identical with or similar to ours is in accord with the conclusions herein expressed. These holdings as we have indicated are based on the following considerations:

"First, that section 6 of Article XIII of our Constitution is a limitation upon the *debt-incurring* powers of school districts (and other political subdivisions) and is *not* a prohibition against making a part of the territory of a school district or of a high school district liable for an indebtedness in excess of 3% of the value of the taxable property therein.

"Second, the debt of Park county high school district is an obligation of that district and of it alone. It has nothing to do with the indebtedness of the school district nor does the indebtedness of the school district form any part of the indebtedness of the high school district. Therefore, each political subdivision may issue bonds without reference to the obligations of the other.

"Third, in the case of either identical or overlapping school districts (or other political subdivisions of the state) the constitutional limitations concerning the incurring of indebtedness is uniformly held to apply to each political subdivision separately and each may contract indebtedness up to the constitutional limit without reference to any other corporation embraced wholly or in part within its area.

"Further, there is nothing in our Constitution which prohibits the legislature from enacting into law as it has done by Chapter 275, Session Laws of 1947, the same rule for the interpretation of section 6 of Article XIII of the Constitution, which the courts, in the cases herein cited, have applied, namely, that both high school districts and school districts may issue bonds up to their constitutional debt limit irrespective of the debts of the other. As said by the Maine court in Kelley v. Brunswick School District, 134 Me. 414, 187 A. 703, 707, 'The courts may not, absent express constitutional limitations, entirely deny the power of the Legislature to create, wholly or partly, in town or city limits, different public corporate bodies, and to make clear that their debts are to be regarded as those of independent corporations.' Citing authorities.

"It is our conclusion that the outstanding obligations of Park county high school district do not effect the debt limit of school district No. 4 of Park county and that the proposed bond issue in the amount of $325,000 is within the debt limit of the school district. The demurrer and motion to quash interposed by defendants to plaintiff's complaints were properly sustained and the complaint properly dismissed." (Italics supplied.)

Cases from the State of Oklahoma are cited by appellant: Mistler vs. Eye, 107 Okla. 289, 231 Pac. 1045; Ikard vs. Union Graded School District, 101 Okl. 80, 223 Pac. 141, Cheek vs. Eye, 96 Okla. 44, 219 Pac. 883. But these decisions are not in point inasmuch as all of them dealt with facts not presented in the case at bar. They involved consolidated school districts and the limitation was of "aggregate" indebtedness of the districts consolidated. Cases from South Carolina have no application here, either, as the controlling law there is radically different than that under which the litigation in hand should be decided. There the state constitution put a limitation also on the aggregate debt of political divisions.

While the views expressed by the authorities above reviewed and excerpted might possibly result in hardship and indirectly increase the taxable burden of the territory included in these districts, yet that is a matter which should be for legislative consideration and action. As appropriately said by the Supreme Court of Oregon in Straw vs. Harris, 54 Ore. 424, 103 Pac. 777:

"It is not for the courts to say whether legislation is wise or unwise, reasonable or unreasonable, just, unjust, or oppressive. That function is for the legislative department only. For the courts to assume this prerogative would be dangerous in the extreme, as they, and not the people, would be virtually the framers of the Constitution. It is the duty of the judicial departments to determine what the law is; not what it should have been. In determining the validity of an act we can look only to the power under the Constitution of the law-makers by whom it was passed, and not to the effect of the exercise of their constitutional authority." Over and over again the courts have adopted the views thus declared by the excerpt given. See cases cited in our case No. 2464, Laverentz vs. City of Cheyenne, 67 Wyo. 187, 217 Pac. 2d 877. It is unnecessary to cite additional apropos cases though that could easily be done.

If it be thought that each corporate entity i.e. common school districts and high school districts should not properly possess power to issued up to 6% bonded indebtedness, it would be extremely easy for the legislature to fix a lower limit upon each by enacting a statute to that effect. 56 C. J. 582 says: "although there is a constitutional provision fixing the limits beyond which bonds may not be issued, a statute fixing the limits at a point below that permitted in the constitution is not unconstitutional." It should be kept in mind, also, that *the restraints in Section* 67-916 *now non-existent, and also in* 67-917 *are upon high school districts only.*

It is contended for appellants that "each of the defendants has the same function of education and as such they are not distinct political units". This reasoning could just as well be applied to the State University and it could thereby be asserted that that unit is not exercising different functions from the high schools or common schools. This we all know is not so. That institution was established as a "body corporate" (Section 70-106 W. C. S. 1945) as are high school districts, for separate and distinct services and purposes.

Each of these entities has its own separate governing bodies, powers and duties. One of the synonyms of "function" is "service". Webster's New International Dictionary. A high school performs a different service in the field of education from either the University or the common school.

It is clear that the High School can not be sued on the debts of School District No. 2 any more than can School District No. 2 be sued for the indebtedness of the High School. As already indicated this rule prevails in the case of a city and a co-terminous or overlapping incorporated school district both being separate corporate entities. Each, too, has power to make its own contracts. This is also true of high school districts.

Before concluding this opinion it is proper to state that the result I reach is to be confined to the facts in this record shown and especially: That neither the high school district nor its component common school districts had, when the several bond issues herein involved were voted, any bonded debt at all and the high school district is not co-terminous with but overlaps School District No. 2.

Some constitutional questions other than those above considered have been suggested but I deem what has been said sufficient to explain my views concerning the case at bar. The judgment of the District Court accords with what I find the law to be and I think it should be affirmed.